CONFIDENTIAL

## T. Boone Pickens Insurance Audit

Notes:
1. Illustration - 0 premiums
2. Illustration - paying as is but change to monthly mode

| Insurance Carrier / Policy Number | Face Amount | Annual Premium Amt | Policy Date | Surrender Chg / CSV as of | Surrender Total Deposits to date 2/2/09 | Owner | Beneficiary | Potential Chargeback (premiums) | SAF Comm. Impacted AS OF 4/2/09 | Agent Comm. Impacted | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jefferson Pilot / J63982023 | $ 1,500,000 | $ 90,615 | 2/1/2007 | $ 84,430.78 | $ 277,445.54 | Boone Pickens Interests, Ltd. | Communities Foundation of Oklahoma State University Foundation | | | | |
| Lincoln Mutual / 7313853 | $ 3,000,000 | $ 209,308 | 2/1/2007 | $ 92,899.00 | $ 329,250.00 | Boone Pickens Interests, Ltd. | Oklahoma State University Foundation | | Should be SAFE | | |
| Nationwide / 85000137249 | $ 1,250,000 | $ 107,760 | 2/1/2007 | $ 103,311.77 | $ 329,250.00 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | Should be SAFE | | |
| Penn Mutual / 6207877 | $ 1,250,000 | $ 136,020 | 2/10/2006 | $ 37,547.70 | $ 270,051.60 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | Should be SAFE | | |
| Prudential / V1229848 | $ 10,000,000 | $ 1,121,055 | 8/4/2007 | $ 892,557.14 | $ 2,242,110.00 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | Should be SAFE | | |
| Genworth / 225194 | $ 500,000 | $ 62,351 | 2/1/2007 | $ 25,611.11 | $ 157,048.44 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | Should be SAFE | | |
| John Hancock / 93283418 | $ 9,700,000 | $ 951,287 | 2/1/2007 | $ 427,561.75 | $ 2,640,000.00 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | Should be SAFE | | |
| Phoenix / 97051653 | $ 10,000,000 | $ 448,538 | 2/10/2007 | | $ 1,784,144.00 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | $ 706,479.11 | | | UNABLE TO OBTAIN DATA FROM CARRIER |
| Transamerica / 65065262 | $ 10,000,000 | $ 726,127 | 2/7/2007 | $ 104,285.91 | $ 335,858.00 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | $ 68,088.02 | $ 40,768.01 | $ 1,735.59 | |
| Transamerica / 65065263 | $ 5,000,000 | $ 453,700 | 2/7/2008 | $ 154,635.91 | $ 499,443.00 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | $ 88,063.72 | $ 40,768.01 | | estimates calculated by KJ |
| Transamerica / 65065264 | $ 5,000,000 | $ 406,455 | 2/7/2008 | $ 92,882.00 | | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | $ 611.50 | $ 1,220.51 | estimates calculated by KJ |
| Transamerica / 60103031 | $ 5,000,000 | $ 103,251 | 3/72/2008 | $ 82,989.00 | | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | | | calculation based on premium provided by TBPI |
| Transamerica / 42276331 | $ 30,000,000 | $ 985,550 | 2/22/2006 | | | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | $ 877,074.14 | $ 14,455.94 | | estimate |
| Transamerica / 60122414 | $ 35,000,000 | | 5/21/2004 | $ 10,259,181.72 | $ 14,175,565.00 | Communities Foundation of Texas for the benefit of the Boone Pickens Foundation Fund | Communities Foundation of Texas for the benefit of the Boone Pickens Foundation Fund | | SAFE no commission paid since 2006 | | |
| Lincoln Benefit Life / 01N1727045 | $ 10,000,000 | $ 709,475 | 1/8/2008 | $ 446,045.10 | $ 1,416,852.21 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | | | MAY RE-SAFE CARRIER WOULD NOT GUARANTEE |
| Mass Mutual / 15822791 | $ 5,000,000 | $ 355,700 | 7/18/2007 | $ 24,908.43 | $ 671,490.00 | Cowboy Athletics, Inc. | Boone Pickens Interests, Ltd. | $ 404,549.00 | | | |
| Mass Mutual / 15822793 | $ 5,000,000 | $ 355,700 | 7/18/2007 | $ 24,908.43 | $ 671,490.00 | Cowboy Athletics, Inc. | Boone Pickens Interests, Ltd. | | $ 8,922.98 | $ 8,010.88 | |
| Mass Mutual / 15442791 | $ 1,850,000 | $ 102,551 | 2/7/2008 | $ 38,595 | $ 200,511.40 | Cowboy Athletics, Inc. | Boone Pickens Interests, Ltd. | ONLY COMM. FIGURES GIVEN | $ 65,009.75 | $ 1,735.59 | |
| Metropolitan Life / 207000203181U | $ 5,000,000 | $ 420,126 | 6/27/2007 | $ 353,237.37 | $ 440,259.14 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | | | | UNABLE TO OBTAIN DATA FROM CARRIER |
| Principal / 6776692 | $ 2,000,000 | $ 226,286 | 2/14/2007 | $ 228,403.52 | $ 678,854.84 | Boone Pickens Interests, Ltd. | Boone Pickens Interests, Ltd. | $ 91,497.00 | | $ 1,735.59 | |
| **Total** | $ 148,850,000 | $ 7,626,172 | | | | | | | | | |

ANDERS_SAF00002124

**EXHIBIT 1**
13

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF TEXAS

3                    DALLAS DIVISION

4    THE LINCOLN NATIONAL LIFE           )
     INSURANCE COMPANY,                  )
5                   Plaintiff,           )
                                         )
6    vs.                                 )
                                         )
7    COWBOY ATHLETICS, INC. and T.       )
     BOONE PICKENS,                      )
8                   Defendants.          )
                                         )
9    -------------------------------     )
                                         )
10   COWBOY ATHLETICS, INC. and T.       )
     BOONE PICKENS,                      )
11                  Counterclaimants,    )
                                         )
12   vs.                                 )
                                         )
13   THE LINCOLN NATIONAL LIFE           )
     INSURANCE COMPANY,                  )   CASE NO.
14                  Counterdefendant.    )   3-10-CV-173-P
                                         )
15   -------------------------------     )
                                         )
16   COWBOY ATHLETICS, INC. and T.       )
     BOONE PICKENS,                      )
17                  Third-Party          )
                    Plaintiffs,          )
18                                       )
     vs.                                 )
19                                       )
     MANAGEMENT COMPENSATION GROUP       )
20   LEE, INC., et al.,                  )
                                         )
21                  Third-Party          )
                    Defendants.          )   COPY
22   *************************************************

23
           ORAL AND VIDEOTAPED DEPOSITION OF
24                  CHERYL ALEXANDER
                  November 21st, 2011
25   *************************************************

EXHIBIT 2
14

1                ANSWERS AND VIDEOTAPED DEPOSITION of

2     CHERYL ALEXANDER, taken at the instance of the

3     Defendants, Countercclaimants and Third-Party

4     Plaintiffs Cowboy Athletics, Inc., et al., on the 21st

5     of November, AD, 2011, in the above styled and numbered

6     cause at the offices of Bickel & Brewer, 4800 Comerica

7     Bank Building, 1717 Main Street, Dallas, Texas, before

8     Wes R. Perryman, a Certified Shorthand Reporter in and

9     for the State of Texas, pursuant to the Federal Rules

10    of Civil Procedure and the provisions stated on the

11    record.

12                A P P E A R A N C E S

13

      APPEARING FOR THE PLAINTIFF AND COUNTERDEFENDANT THE
14    LINCOLN NATIONAL LIFE INSURANCE COMPANY:

15          MR. GREGORY J. STAR
            Drinker, Biddle & Reath, LLP
16          1177 Avenue of the Americas, 41st Floor
            New York, New York 10036-2714
17          andrew.lorin@dbr.com
            grant.nichols@dbr.com, david.brown@dbr.com
18          joseph.evangelista@dbrcom,
            gregory.star@dbr.com
19

20    APPEARING FOR THE DEFENDANTS, COUNTERCCLAIMANTS AND
      THIRD-PARTY PLAINTIFFS COWBOY ATHLETICS, INC., ET AL.:
21
            MR. TIMOTHY J. MORRIS
22          MR. RENÉ J. KERN
            Gianelli & Morris
23          888 West 6th Street, 9th Floor
            Los Angeles, California 90017
24          tim.morris@gmlawyers.com
            diane.schmidt@gmlawyers.com
25          rob.gianelli@gmlawyers.com
            rjklawyer@sbcglobal.net

EXHIBIT 2
15

1

APPEARING FOR THIRD-PARTY DEFENDANTS MANAGEMENT
2    COMPENSATION GROUP LEE, INC., ET AL.:

3            *MR. BRADLEY M. GORDON*
             Reese Gordon Marketos, LLP
4            750 North St. Paul Street, Suite 610
             Dallas, Texas 75201
5            joel.reese@rgmfirm.com, alya.taha@rgmfirm.com
             brad.gordon@rgmfirm.com
6

7    APPEARING FOR THIRD-PARTY DEFENDANT JAMES GLENN TURNER,
     JR.:
8
             *MR. ROY L. STACY*
9            Stacy & Conder, LLP
             901 Main Street, Suite 6220
10           Dallas, Texas 75202
             stacy@stacyconder.com,spencer@stacyconder.com
11           howie@stacyconder.com

12

APPEARING FOR THIRD-PARTY DEFENDANTS LARRY ANDERS AND
13   SUMMIT ALLIANCE FINANCIAL, LLP:

14           *MR. JEREMY D. CAMP*
             Bickel & Brewer
15           4800 Comerica Bank Building
             1717 Main Street
16           Dallas, Texas 75201
             jsr@bickelbrewer.com, jad@bickelbrewer.com
17           jyc@bickelbrewer.com

18               -and-

19           *MR. SAMUEL A. MILLS*
             Fishman Jackson Luebker
20           13155 Noel Road, Suite 700
             Dallas, Texas 75240
21           smills@fishmanjackson.com

22

23   ALSO APPEARING:  Mr. John Lee
                      Mr. Glenn Turner
24                    Mr. David Guerra, Videographer

25

**EXHIBIT 2**
16

| | |
|---|---|
| 15:57:05 1 | MR. GORDON:  Objection, form. |
| 15:57:12 2 | MR. MORRIS:  Did, to your knowledge, |
| 15:57:13 3 | anyone at Mr. Lee's company make any effort to contact |
| 15:57:16 4 | the insureds through any means to let them know that |
| 15:57:23 5 | their signatures had been affixed on these policy |
| 15:57:26 6 | illustrations that were submitted to Lincoln National? |
| 15:57:31 7 | THE WITNESS:  Not to my knowledge. |
| 15:57:36 8 | Q.    (BY MR. MORRIS)  Mr. Lee didn't request that |
| 15:57:37 9 | you do that? |
| 15:57:38 10 | A.    No. |
| 15:57:39 11 | Q.    Did Mr. Turner request that you do that? |
| 15:57:41 12 | A.    No. |
| 15:57:41 13 | Q.    Did you ask Mr. Turner whether it was |
| 15:57:43 14 | appropriate to cut and paste the insureds' signatures |
| 15:57:48 15 | from the application forms onto the Lincoln National |
| 15:57:51 16 | policy illustration forms? |
| 15:57:53 17 | A.    No. |
| 15:57:53 18 | Q.    Did Mr. Lee indicate to you at any point in |
| 15:57:56 19 | time that that was okay? |
| 15:57:58 20 | A.    Yes. |
| 15:57:59 21 | Q.    When did he first so indicate to you? |
| 15:58:02 22 | A.    He didn't indicate to me.  I know that he |
| 15:58:05 23 | told -- Amber asked him about it, was my understanding. |
| 15:58:08 24 | Q.    Before she did it? |
| 15:58:10 25 | A.    Yes. |

EXHIBIT 2
17

16:00:45 1   signatures in order to get them back to them so

16:00:48 2   quickly?

16:00:50 3               MR. CAMP:  Objection.

16:00:50 4               THE WITNESS:  I don't know that it ever

16:00:51 5   came up.  I mean, I don't think anything -- I don't

16:00:54 6   think they ever said, "How did you get them this fast?"

16:00:58 7   I don't think that was ever questioned.

16:01:00 8               MR. MORRIS:  And you never volunteered --

16:01:02 9   strike that.

16:01:10 10              THE WITNESS:  We had -- you know, we had

16:01:11 11  the owner's signature and his instructions not to

16:01:15 12  contact the insured -- the insureds, but I don't think

16:01:18 13  anyone -- I never heard anyone object to it.

16:01:22 14              MR. MORRIS:  Were any of Mr. Holder's

16:01:24 15  signatures lifted from others -- other signatures that

16:01:28 16  he had made and placed on policy illustrations?

16:01:31 17              THE WITNESS:  Not to my knowledge.

16:01:35 18       Q.   (BY MR. MORRIS)  There would be no reason to

16:01:36 19  do that, correct, because you could FedEx it back --

16:01:39 20       A.   Right.

16:01:40 21       Q.   -- and forth in a day?

16:01:41 22       A.   Right.  In fact, some of the things he signed

16:01:44 23  he faxed back to us to get them to us quickly.

16:01:47 24       Q.   Did Ms. Ivey ever indicate to you that apart

16:01:49 25  from the instructions she received from Mr. Lee to cut

EXHIBIT 2
18

| | | |
|---|---|---|
| 16:01:53 | 1 | and paste insureds' signatures from the Lincoln |
| 16:01:58 | 2 | National applications and put them on the policy |
| 16:02:00 | 3 | illustrations she also received instructions at some |
| 16:02:03 | 4 | point in time from Mr. Lee to cut and paste |
| 16:02:07 | 5 | Mr. Holder's signature and put them on applications -- |
| 16:02:10 | 6 | on policy illustrations? |
| 16:02:12 | 7 | MR. GORDON:  Objection, form. |
| 16:02:12 | 8 | THE WITNESS:  Let me back up a minute. |
| 16:02:14 | 9 | First of all, to my knowledge, he never told her to cut |
| 16:02:16 | 10 | and paste.  What he said was when she asked if -- you |
| 16:02:22 | 11 | know, what to do about the signature, what he said was, |
| 16:02:25 | 12 | "They are going to drop by today."  And that meant "cut |
| 16:02:29 | 13 | and paste."  But he didn't actually say those words. |
| 16:02:32 | 14 | Q.   (BY MR. MORRIS)  Okay.  They are going to drop |
| 16:02:33 | 15 | by today?  That's known -- |
| 16:02:35 | 16 | A.   That's very common in the insurance industry. |
| 16:02:39 | 17 | Q.   And the phrasing "they are going to drop by |
| 16:02:42 | 18 | today" is we are going to put whoever's signature is |
| 16:02:46 | 19 | required on this form, quote, because they are going to |
| 16:02:49 | 20 | drop by today, end quote, knowing that they are not |
| 16:02:51 | 21 | going to drop by. |
| 16:02:52 | 22 | A.   Yes. |
| 16:02:53 | 23 | Q.   So by some method, be it cut and paste, Xerox, |
| 16:03:00 | 24 | tracing signatures or anything in between, the common |
| 16:03:06 | 25 | knowledge was, "they are going to drop by today," you |

EXHIBIT 2
19

| 16:03:10 | 1 | put that person's signature on that form. |
| 16:03:14 | 2 | MR. GORDON:  Objection, form. |
| 16:03:15 | 3 | THE WITNESS:  Yes. |
| 16:03:16 | 4 | MR. MORRIS:  I'm sorry, your answer was? |
| 16:03:18 | 5 | THE WITNESS:  Yes. |
| 16:03:21 | 6 | Q.    (BY MR. MORRIS)  How long had, to your |
| 16:03:22 | 7 | knowledge, the "they are going to drop by today" |
| 16:03:27 | 8 | practice been employed by Mr. Lee's office? |
| 16:03:31 | 9 | A.    I really don't know. |
| 16:03:32 | 10 | Q.    Decades? |
| 16:03:33 | 11 | A.    Oh, I have no idea. |
| 16:03:36 | 12 | Q.    When is the first time you heard that "they |
| 16:03:40 | 13 | are going to drop by today" language? |
| 16:03:43 | 14 | A.    I honestly don't know. |
| 16:03:44 | 15 | Q.    In the 1990s had you heard that language? |
| 16:03:48 | 16 | A.    Probably. |
| 16:03:51 | 17 | Q.    And sometime during your employment with |
| 16:03:54 | 18 | Mr. Lee, you came to understand what that meant. |
| 16:03:58 | 19 | A.    Yes. |
| 16:03:58 | 20 | Q.    Did he explain it to you? |
| 16:03:59 | 21 | A.    I don't know that he explained it to me.  I |
| 16:04:02 | 22 | really don't remember who told me what that meant, |
| 16:04:04 | 23 | but -- |
| 16:04:04 | 24 | Q.    Did Ms. Ivey seem to understand what "they are |
| 16:04:08 | 25 | going to drop by today" meant? |

EXHIBIT 2
20

16:04:10  1      A.   Yes.

16:04:10  2      Q.   Had you and she ever discussed what "they are

16:04:14  3  going to drop by today" meant to the two of you?

16:04:18  4      A.   No.

16:04:25  5      Q.   After -- strike that.

16:04:27  6           Did you observe Ms. Ivey cutting and

16:04:29  7  pasting signatures onto policy illustrations?

16:04:36  8      A.   Yes.

16:04:36  9      Q.   And did she express to you any misgivings

16:04:39 10  about doing that?

16:04:42 11      A.   No, she didn't.  I think she felt the same

16:04:45 12  thing we all did, that the owner had signed off on it

16:04:49 13  and they are paying for it and it really was kind of a

16:04:52 14  moot point.

16:04:53 15      Q.   You understood that Lincoln National was

16:04:55 16  requiring the insured's signature on those policy

16:04:58 17  illustrations, though, however.  Correct?

16:05:02 18               MR. STACY:  Objection, form.

16:05:02 19               MR. GORDON:  Objection, form.

16:05:04 20               MR. CAMP:  Objection, form.

16:05:05 21               MR. STAR:  Objection, form.

16:05:05 22               THE WITNESS:  So am I going to answer

16:05:05 23  that --

16:05:05 24               MR. MORRIS:  Yes.

16:05:07 25               THE WITNESS:  -- or not?

EXHIBIT 2
21

| 16:05:07 | 1 | MR. MORRIS:  Yes. |
| 16:05:08 | 2 | THE WITNESS:  I understood that Lincoln |
| 16:05:10 | 3 | wanted -- I'm sorry.  Say that one more time. |
| 16:05:12 | 4 | MR. MORRIS:  You understood that Lincoln |
| 16:05:13 | 5 | had requested that the insureds' signatures be obtained |
| 16:05:17 | 6 | on the policy illustrations. |
| 16:05:18 | 7 | THE WITNESS:  Yes, I did. |
| 16:05:25 | 8 | MR. STAR:  Objection, form. |
| 16:05:27 | 9 | MR. GORDON:  Objection, form. |
| 16:05:28 | 10 | MR. REESE:  Objection, form. |
| 16:05:28 | 11 | MR. MORRIS:  Did you get the response? |
| 16:05:28 | 12 | Who indicated that to you, that Lincoln was requesting |
| 16:05:32 | 13 | those insureds' signatures on the policy illustration |
| 16:05:32 | 14 | forms? |
| 16:05:32 | 15 | MR. STAR:  Objection, form. |
| 16:05:33 | 16 | THE WITNESS:  No one indicated to me.  On |
| 16:05:35 | 17 | the form itself it has a place for the applicant and a |
| 16:05:37 | 18 | place for the owner to sign. |
| 16:05:41 | 19 | Q.   (BY MR. MORRIS)  Did you ever have a |
| 16:05:42 | 20 | discussion with anyone at Lincoln regarding the |
| 16:05:47 | 21 | requirement for the insured's signature on the policy |
| 16:05:50 | 22 | illustrations? |
| 16:05:51 | 23 | A.   No. |
| 16:05:51 | 24 | Q.   Anyone at Lincoln Financial distributors? |
| 16:05:55 | 25 | A.   No. |

**EXHIBIT 2**
22

Licoln National v. Cowboys Athletics

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, )<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>COWBOY ATHLETICS, INC., and )<br>T. BOONE PICKENS, )<br>Defendant. ) | **COPY**<br><br>Cvil Action No.<br>3:10-CV-173-P |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*  )
COWBOY ATHLETICS, INC., and      )
T. BOONE PICKENS,                )
        Counterclaimants,        )
                                 )
    -vs-                          )
                                 )
THE LINCOLN NATIONAL LIFE        )
INSURANCE COMPANY,               )
        Counterdefendant.        )
\* \* \* \* \* \* \* \* \* \* \* \* \* \*  )
COWBOY ATHLETICS, INC., and      )
T. BOONE PICKENS,                )
    Third-Party Plaintiffs,      )
                                 )
    -vs-                          )
                                 )
MANAGEMENT COMPENSATION GROUP    )
LEE, INC.; JOHN RIDINGS LEE;     )
JOHN RIDINGS LEE COMPANY, INC.;  )
JAMES GLENN TURNER, JR.; LARRY   )
ANDERS; SUMMIT ALLIANCE          )
FINANCIAL, LLP., and DOES 1      )
through 10, Inclusive,           )
        Third-Party Defendants.  )
\* \* \* \* \* \* \* \* \* \* \* \* \* \*

        DEPOSITION OF: HELENA ROBERTS
        DATE:       October 4, 2011
        TIME:       8:58 a.m.
        HELD AT:    Brandon Smith Reporting Service

        Reporter:  Bethany A. Carrier, LSR #071
249 Pearl Street        Six Landmark Square - 4th Floor
Hartford, CT  06103     Stamford, CT  06901
    (860) 549-1850          (203) 316-8591
    (800) 852-4589          (800) 852-4589

EXHIBIT 3
23

Licoln National *v.* Cowboys Athletics

## A P P E A R A N C E S

Representing the Plaintiff and Counterclaim Defendant
The Lincoln National Life Insurance Company:

DRINKER, BIDDLE & REATH, LPP
One Logan Square
18th and Cherry Streets
Philadelphia, Pennsylvania  19103-6996
      By:  CHARLES J. VINICOMBE, ESQ.
           charles.vinicombe@dbr.com
           (215) 988-1139


Representing the Defendant and Counterclaimants Cowboy
Athletics, Inc. and  T. Boone Pickens:

GIANELLI & MORRIS
888 West 6th Street, 9th Floor
Los Angeles, California  90017
      By:  ROBERT S. GIANELLI, ESQ
           rob.gianelli@gmlawyers.com
           LOTTE COLBERT, ESQ.
           (213) 489-1600


Representing the Third-Party Defendant Glenn Turner,
Jr.:

STACY & CONDER, LLP
901 Main Street - Suite 6220
Dallas, Texas  75202
      By:  CLINTON D. HOWIE, ESQ.
           howie@stacyconder.com
           (214) 748-1421


Representing the Third-Party Defendants Larry Anders
and Summit Alliance Financial, LLP:

BICKEL & BREWER
1717 Main Street - Suite 4800
Dallas, Texas  75201
      By:  JEREMY D. CAMP, ESQ.
           jyc@bickelbrewer.com
           (214) 653-4000

                                                          EXHIBIT 3
                                                          24

Licoln National v. Cowboys Athletics

Page 3

A P P E A R A N C E S (Cont'd)


Representing the Third-Party Defendants Management
Compensation Group Lee, Inc., John Ridings Lee, and
John Ridings Lee Company, Inc.:

REESE, GORDON, MARKETOS
750 N. Saint Paul Street
Suite 610
Dallas, Texas  75201
        By:  BRADLEY M. GORDON, ESQ.
             brad.gordon@rgmfirm.com
             (214) 382-9802


Also Present:

JOHN RIDINGS LEE
JACOB BRANDON, Videographer

EXHIBIT 3
25

Licoln National v. Cowboys Athletics

Page 11

1    words, try not to say "uh-huh" or "uh-uh."  While this

2    proceeding is being videotaped, and we could probably

3    interpret those kinds of gestures, the court reporter

4    is making the official transcript, and for that we need

5    words to be clear.  Do you understand that?

6         A    I do.

7         Q    Is there any reason you cannot have your

8    deposition taken today?

9         A    No.

10         Q    You understand you're under oath in this

11    proceeding?

12         A    I do.

13         Q    And you understand what that means?

14         A    I do.

15         Q    What is your present position with Lincoln

16    National?

17         A    My current position is assistant vice

18    president of underwriting and new business.

19         Q    And how long have you had that position?

20         A    I have had that position for six years.

21         Q    What did you do before that?

22         A    I was the director of brokerage, new

23    business.

24         Q    For how long?

25         A    That position I held for three years.

EXHIBIT 3
26

Licoln National v. Cowboys Athletics

10/4/2011                                                       Helena Roberts

Page 132

1              MR. GORDON:  Objection.  Form.

2       A    They would contact our complaint department,

3   as I indicated before, and escalate the issue.

4              MR. HOWIE:  Rob, can we have an

5       agreement that an objection by one party is

6       good for all?

7              MR. GIANELLI:  Sure.

8   BY MR. GIANELLI:

9       Q    Okay.  Let's go to the second paragraph here.

10  And this raises a question about the witnessing of the

11  signatures.  And it says in the second sentence that,

12  Three of the delivery receipts were witnessed by Amber

13  Ivey, who we believe was an employee of your firm in

14  Texas.  Do you see that?

15      A    Yes.

16      Q    And then it says, Do you recall circumstances

17  why these were witnessed by Amber?  And was she present

18  when these three delivery receipts were signed?  Do you

19  see that?

20      A    Yes.

21      Q    Let me take you to Exhibit 109, which is the

22  collection of -- 1009 which is the collection of

23  delivery receipts.  If you turn to Bates number 60280,

24  you see this has got the signature -- purports to be

25  the signature of Amber Ivey on the signature line.  Do

EXHIBIT 3
27

Page 133

1   you see that?

2        A    Yes.

3        Q    Before this case arose, did you know who

4   Amber Ivey was?

5        A    No.

6        Q    Did you know who Mr. Lee was?

7        A    No.

8        Q    Now, if Ms. Ivey did not, in fact, witness

9   Mr. Holder's signature, but signed this at a different

10  time and place, would that be considered a forgery

11  under Lincoln National's guidelines?

12              MR. VINICOMBE:  Objection.

13       A    Yes.

14  BY MR. GIANELLI:

15       Q    Do you know if Lincoln National ever took

16  into account the fact that at least some of these

17  signatures may have been falsely witnessed by Amber

18  Ivey?

19              MR. VINICOMBE:  Objection to

20       form.

21       A    I'm sorry.  Could you repeat that?

22  BY MR. GIANELLI:

23       Q    Yes.  Did Lincoln National ever take into

24  account the fact that Amber Ivey may have falsely

25  witnessed the signing of some of the delivery

EXHIBIT 3
28

Amber Ivey

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE NORTHERN DISTRICT OF TEXAS
 3                     DALLAS DIVISION
 4   THE LINCOLN NATIONAL LIFE              )
     INSURANCE COMPANY,                     )
 5                 Plaintiff,               )
                                            )
 6   vs.                                    )
                                            )
 7   COWBOY ATHLETICS, INC. and T.          )
     BOONE PICKENS,                         )
 8                 Defendants.              )
                                            )
 9   -------------------------------        )
                                            )
10   COWBOY ATHLETICS, INC. and T.          )
     BOONE PICKENS,                         )
11                 Counterclaimants,        )
                                            )
12   vs.                                    )
                                            )
13   THE LINCOLN NATIONAL LIFE              )
     INSURANCE COMPANY,                     ) CASE NO.
14                 Counterdefendant.        ) 3-10-CV-173-P
                                            )
15   -------------------------------        )
                                            )
16   COWBOY ATHLETICS, INC. and T.          )
     BOONE PICKENS,                         )
17                 Third-Party              )
                   Plaintiffs,              )
18                                          )
     vs.                                    )
19                                          )
     MANAGEMENT COMPENSATION GROUP          )
20   LEE, INC., et al.,                     )
                                            )
21                 Third-Party              )
                   Defendants.              )
22
     ******************************************************
23
              ORAL AND VIDEOTAPED DEPOSITION OF
24                      AMBER IVEY
                    December 13th, 2011
25
     ******************************************************
```

EXHIBIT 4
29

Amber Ivey

Page 2

```
 1               ANSWERS AND VIDEOTAPED DEPOSITION of
 2   AMBER IVEY, taken at the instance of the Defendants,
 3   Counterclaimants and Third-Party Plaintiffs Cowboy
 4   Athletics, Inc., et al., on the 13th of December, AD,
 5   2011, in the above styled and numbered cause at the
 6   offices of Baker Botts, 2001 Ross Avenue, Suite 1100,
 7   Dallas, Texas, before Wes R. Perryman, a Certified
 8   Shorthand Reporter in and for the State of Texas,
 9   pursuant to the Federal Rules of Civil Procedure and
10   the provisions stated on the record.
11
12                A P P E A R A N C E S
13
     APPEARING FOR THE PLAINTIFF AND COUNTERDEFENDANT THE
14   LINCOLN NATIONAL LIFE INSURANCE COMPANY:
15           MR. ANDREW J. LORIN
             Drinker, Biddle & Reath, LLP
16           1177 Avenue of the Americas, 41st Floor
             New York, New York 10036-2714
17           andrew.lorin@dbr.com, grant.nichols@dbr.com
             david.brown@dbr.com, gregory.star@dbr.com
18           joseph.evangelista@dbrcom
19
     APPEARING FOR THE DEFENDANTS, COUNTERCLAIMANTS AND
20   THIRD-PARTY PLAINTIFFS COWBOY ATHLETICS, INC., ET AL.:
21           MR. TIMOTHY J. MORRIS
             Gianelli & Morris
22           888 West 6th Street, 9th Floor
             Los Angeles, California 90017
23           tim.morris@gmlawyers.com
             diane.schmidt@gmlawyers.com
24           rob.gianelli@gmlawyers.com
             rjklawyer@sbcglobal.net
25
```

EXHIBIT 4
30

Amber Ivey

Page 3

```
 1    APPEARING FOR THIRD-PARTY DEFENDANTS MANAGEMENT
      COMPENSATION GROUP LEE, INC., ET AL.:
 2
              MR. JOEL W. REESE
 3            Reese Gordon Marketos, LLP
              750 North St. Paul Street, Suite 610
 4            Dallas, Texas 75201
               joel.reese@rgmfirm.com, alya.taha@rgmfirm.com
 5            brad.gordon@rgmfirm.com
 6
      APPEARING FOR THIRD-PARTY DEFENDANT JAMES GLENN TURNER,
 7    JR.:
 8            MR. CLINTON D. HOWIE
              Stacy & Conder, LLP
 9            901 Main Street, Suite 6220
              Dallas, Texas 75202
10             stacy@stacyconder.com,spencer@stacyconder.com
              howie@stacyconder.com
11
12    APPEARING FOR THIRD-PARTY DEFENDANTS LARRY ANDERS AND
      SUMMIT ALLIANCE FINANCIAL, LLP:
13
              MR. JEREMY D. CAMP
14            Bickel & Brewer
              4800 Comerica Bank Building
15            1717 Main Street
              Dallas, Texas 75201
16             jsr@bickelbrewer.com, jad@bickelbrewer.com
              jyc@bickelbrewer.com
17
                   -and-
18
              MR. SAMUEL A. MILLS
19            Fishman Jackson Luebker
              13155 Noel Road, Suite 700
20            Dallas, Texas 75240
               smills@fishmanjackson.com
21
22
23
24    ALSO APPEARING:  Mr. John Lee
                       Mr. Glenn Turner
25                     Mr. David Guerra, Videographer
```

**EXHIBIT 4**
**31**

Amber Ivey

Page 44

1    National Life Insurance Company application form?

2        A.   No.  I believe it was a different company.

3        Q.   Was that Transamerica?

4        A.   Perhaps so.  I'm not sure.

5        Q.   Do you have a recollection as you sit here

6    today that many of the Gift of a Lifetime applications

7    that were submitted to Lincoln National had information

8    that was gleaned from Transamerica applications?

9        A.   Yes.

10       Q.   Do you believe that the Transamerica

11   application for Dr. Allen was not for $10,000,000 and

12   that's why it required a handwritten entry?

13       A.   I'm not sure why.  I don't remember that.

14       Q.   Looking at Exhibit 1149, Bates stamp page 467,

15   you were not in Stillwater, Oklahoma on or about

16   11/27/06, were you?

17       A.   No.

18       Q.   And you didn't witness Dr. Allen's signature?

19       A.   No.

20       Q.   Is that an original signature, as far as you

21   know, for Dr. Thomas W. Allen?

22       A.   Yes.

23       Q.   And you hadn't signed your name as witnessing

24   Dr. Allen's signature when the application that we've

25   marked as Exhibit 1149 was sent to Dr. Allen.  Correct?

EXHIBIT 4
32

Amber Ivey

Page 45

1            MR. LORIN:  Objection.

2            THE WITNESS:  Can you repeat the

3   question?

4            MR. MORRIS:  You didn't sign your name as

5   witnessing Dr. Allen's signature until after it was

6   returned to Mr. Lee's office by Dr. Allen.  Correct?

7            THE WITNESS:  Correct.

8       Q.   (BY MR. MORRIS)  And how did you choose the

9   date 11/27/06?

10      A.   I don't remember how we chose that date.

11      Q.   Were you told by someone at Mr. Lee's office

12   to sign your name as witnessing Dr. Allen's signature

13   on Bates stamp page 467 of Exhibit 1149?

14      A.   Not specifically, no.

15      Q.   Were you generally told to sign your name as

16   witness to Dr. Allen's signature?

17      A.   Yes.

18            MR. HOWIE:  Objection, form.

19            THE WITNESS:  Yes.

20            MR. MORRIS:  Describe that for me.

21            MR. LORIN:  Objection.

22            THE WITNESS:  When there was -- when we

23   would send out the apps and they would sign them and

24   they would come back with no witness, we would go ahead

25   and sign them, because the insured would -- we were

EXHIBIT 4
33

Amber Ivey

Page 46

```
 1    under a huge time crunch from Cowboy Athletics and were
 2    instructed not to speak a lot to the insureds, not to
 3    bother them.  So in those cases we would witness them
 4    to save time.
 5         Q. .  (BY MR. MORRIS)  And when did you first learn
 6    that there was a huge time crunch regarding the Gift of
 7    a Lifetime applications?
 8         A.    I don't know.
 9         Q.    Was it in November of '06?
10               MR. LORIN:  Objection.
11               THE WITNESS:  I don't know.
12               MR. MORRIS:  Was it in December of '06?
13               MR. LORIN:  Objection.
14               THE WITNESS:  I'm not sure.  Don't know.
15               MR. MORRIS:  You're not certain if it was
16    prior to the time you signed your name as witnessing
17    Dr. Allen's signature.  Correct?
18               THE WITNESS:  I'm not sure.
19               MR. LORIN:  Objection.
20               THE WITNESS:  It was during the
21    application process.
22               MR. MORRIS:  Looking at -- strike that.
23               Who told you that there was a time
24    crunch?
25               THE WITNESS:  It was known throughout the
```

EXHIBIT 4
34

Amber Ivey

1     Q.   Would you just -- if you wanted to make a

2   notation concerning a particular application, would you

3   just write it somewhere within that file?

4     A.   I may have, yes.

5     Q.   You didn't have a custom and practice one way

6   or the other, though?

7     A.   No.

8     Q.   Have you ever heard of the language "Drop by

9   to sign" or words to that effect regarding the signing

10   of a person's signature on an insurance form?

11                MR. LORIN:  Objection.

12                MR. CAMP:  Objection.

13                THE WITNESS:  Yes.

14                MR. MORRIS:  When did you first hear of

15   that language?

16                MR. HOWIE:  Objection, form.

17                THE WITNESS:  When I first started

18   working for MCG.

19     Q.   (BY MR. MORRIS)  The first time around?

20     A.   First time, yes, sir.

21     Q.   Who told you of that language?

22                MR. HOWIE:  Objection, form.

23                THE WITNESS:  I heard it said within the

24   office various times.

25                MR. MORRIS:  And what is the language

**EXHIBIT 4**
35

Amber Ivey

Page 80

1    that you're familiar with?  I said "Drop by to sign."

2    Is that what the language is, or is it something other

3    than that?

4                    THE WITNESS:  That's the language.

5        Q.    (BY MR. MORRIS)  And did anyone explain to you

6    what "Drop by to sign" meant?

7        A.    Not specifically.  I just knew.

8        Q.    How did you come to understand what you

9    believed "Drop by to sign" meant?

10       A.    It meant if there was an application where an

11   insured had signed -- or had not signed on a form where

12   it didn't matter where it was something not specific to

13   them, like if an owner owned the policy but was not the

14   insured, then we would -- the "drop by" would mean to

15   go ahead and cut and paste their name on that signature

16   line.

17       Q.    Whose name?

18       A.    The insured.

19       Q.    Okay.  Did you ever cut and paste a signature

20   for the owner of the policy?

21                   MR. HOWIE:  Objection, form.

22                   THE WITNESS:  Not that I know of, no.

23                   MR. MORRIS:  Did anyone explain to you

24   how to go about the process of cutting and pasting a

25   name from one insurance form and putting it on another

EXHIBIT 4
36

Amber Ivey

Page 96

1    Lincoln National regarding whether or not the owner's
2    signature was sufficient on a Gift of a Lifetime policy
3    illustration?
4                   THE WITNESS:  No.
5                   MR. MORRIS:  Was there a consensus of
6    opinion amongst you, Ms. Alexander and Ms. Connolly
7    that cut-and-paste signatures of insureds should be put
8    on the Gift of a Lifetime policy illustrations?
9                   MR. LORIN:  Objection.
10                  MR. CAMP:  Objection.
11                  THE WITNESS:  I believe so, yes.
12                  MR. MORRIS:  No one at Summit Alliance
13   ever told you, "What are you doing?  We don't need the
14   insureds' signatures on these policy illustrations."
15   Correct?
16                  THE WITNESS:  Not to my knowledge, no.
17       Q.   (BY MR. MORRIS)  If you would look at a
18   document that was previously marked as Exhibit 1139.  I
19   would like to direct your attention to the top of
20   Exhibit 1139, which is an e-mail from Gregg, with two
21   G's, G-R-E-G-G, Michael, M-I-C-H-A-E-L, to Larry
22   Anders.  Subject is "FW:  T. Boone Pickens."
23                  Have you ever heard of the name Gregg A.
24   Michael?
25       A.   I have heard of it.

**EXHIBIT 4**
37

Amber Ivey

Page 100

```
 1        A.    It looks that way, yes.
 2        Q.    In the cut-and-paste jobs that you did on the
 3   Gift of a Lifetime applications and illustrations, did
 4   you use the proposed insured's signature on the
 5   application to copy and then cut and paste and put onto
 6   the illustration forms?
 7        A.    Yes.
 8        Q.    How is it that you chose the signatures on the
 9   application as opposed to any other signature?
10        A.    That was the only signatures we had, were on
11   the apps.
12        Q.    Did you have a discussion with Ms. Alexander
13   as to which signatures would be copied and pasted?
14        A.    I believe we may have so that we could choose
15   one, yes.
16        Q.    I mean, was there -- was there a decision
17   made, "We are going to use the application signatures
18   as opposed to the signatures on authorization forms
19   that would also be part of the application"?
20        A.    Yes.  Not specifically, but I know we used the
21   application signatures.
22        Q.    And was that the custom and practice as you
23   knew it there at Mr. Lee's office?
24              MR. HOWIE:  Objection, form.
25              THE WITNESS:  Yes, I believe so.
```

EXHIBIT 4
38

Amber Ivey

```
 1       A.    No.
 2                  MR. HOWIE:   Tim, it's noon.   I know
 3     she --
 4                  MR. MORRIS:   Let's cut off.   Let's take a
 5     break.
 6                  MR. HOWIE:   Okay.
 7                  THE VIDEOGRAPHER:   Marking the end of
 8     tape two, deposition of Amber Ivey, 12:00 p.m.   Off the
 9     record.
10                  (Luncheon recess.)
11                  THE VIDEOGRAPHER:   The start of tape
12     three, the deposition of Amber Ivey, 2:08.   Back on the
13     record.
14       Q.    (BY MR. MORRIS)   Ms. Ivey, did you and
15     Ms. Alexander keep track of which one of you cut and
16     pasted which signatures on which illustrations?
17       A.    No.
18       Q.    We can go through Exhibit 1101, which you have
19     in front of you.   Is there any way that you're going to
20     be able to determine whether or not any particular
21     cut-and-paste job was your cut-and-paste job as opposed
22     to Ms. Alexander's?
23       A.    No.
24       Q.    Are you satisfied that every illustration in
25     1101 is a cut-and-paste job of the insureds's
```

EXHIBIT 4
39

Amber Ivey

Page 109

1   signatures?

2       A.   Yes.  I mean, I could look through them all,

3   but I believe so, yes.

4       Q.   Why don't you take a quick moment and just

5   satisfy yourself that each of the insureds' signatures

6   is a cut-and-paste job.

7                    MR. HOWIE:  And, Tim, you mean the

8   signatures on just the illustrations.  Right?

9                    MR. MORRIS:  Correct.

10                   THE WITNESS:  Yes.

11      Q.   (BY MR. MORRIS)  And having looked through

12  Exhibit 1101, are you satisfied also that the

13  cut-and-paste illustrations -- strike that.

14                   Having looked through 1101, are you

15  satisfied that the insureds' cut-and-paste signatures

16  all come from the insureds' signatures on the Gift of a

17  Lifetime applications?

18                   MR. HOWIE:  Objection, form.

19                   THE WITNESS:  Yes.

20                   (Deposition Exhibit 1178 marked.)

21      Q.   (BY MR. MORRIS)  I'm going to mark as next in

22  order, which is Exhibit 1178, certain pages that I've

23  taken from various document productions.  But they all

24  relate to a Gift of a Lifetime insured by the name of

25  Connie Mashburn.  Exhibit 1178 includes Bates stamp

EXHIBIT 4
40

Amber Ivey

Page 126

1    time and others that she faxed at a time that may not

2    be in here, I think it's potentially misleading.  So I

3    just make an objection on those grounds.

4        Q.   (BY MR. MORRIS)  Fair enough.

5        A.   Yes.

6        Q.   Yes is an answer to my question or yes to fair

7    enough?

8        A.   Yes is an answer to your question.

9        Q.   All right.  Where were the policies when you

10   faxed the policy delivery receipts within Exhibit 1182?

11       A.   I believe they were in our office.

12       Q.   By the time you faxed these policy delivery

13   receipts to Mr. Holder on February 9 of 2007, had you

14   already been told of the conversation Ms. Alexander

15   related to you between Mr. Lee and Mr. Holder about who

16   was going to maintain custody of the originals?

17       A.   Yes, I believe so.

18       Q.   Looking through Exhibit 1102, which is the

19   binder that you have in front of you, certain of these

20   policy delivery receipts were witnessed by you, and the

21   first one that I see is Bates stamp page CAI 015078.

22   Do you see that?

23       A.   Yes.

24       Q.   And this is -- is that your signature under

25   the -- or above the line with the word "Witness"?

EXHIBIT 4
41

Amber Ivey

Page 127

1    A.    Yes.

2    Q.    And did you in fact witness Mr. Holder's

3    signature of this policy delivery receipt?

4    A.    No.

5    Q.    If you notice up above, the fax headers are

6    February 14th of '07.  Do you see that?

7    A.    Yes.

8    Q.    That was clearly some days after the February

9    9th initial fax of the initial batch of policy delivery

10   receipts.  Do you see that?

11   A.    Yes.

12   Q.    And the other box is still marked with Cowboy

13   Athletics, Inc. by J. Mike Holder as being the person

14   who was going to maintain custody of the original

15   policies.  Do you see that?

16   A.    Yes.

17   Q.    Did you ever ask Ms. Alexander why that box

18   was still being filled out in that manner if Mr. Lee's

19   office was going to maintain custody of the original

20   policies?

21            MR. LORIN:  Objection.

22            THE WITNESS:  I -- well, it would be

23   hearsay.  I mean, I don't know if I should -- I mean, I

24   know what I heard about why.

25            MR. HOWIE:  You can relate the

EXHIBIT 4
42

Amber Ivey

Page 130

1       Q.   The next one I find is CAI 05 -- 015086.   Let
2    me repeat that.   CAI 015086.   It's also dated 2/14 of
3    '07.   Do you see that?
4       A.   Yes.
5       Q.   And that's your signature?
6       A.   Yes.
7       Q.   And you did not witness Mr. Holder's
8    signature, did you?
9       A.   No.
10       Q.   Is that your dating of 2/14/07?
11       A.   Yes.
12       Q.   Is that Mr. Holder's original signature on
13    that document?
14       A.   Yes.
15       Q.   Did anyone tell you at Mr. Lee's office that
16    it was approved for you to witness Mr. Holder's
17    signature on these policy delivery receipts even though
18    you didn't?
19       A.   No.   It was just what we were doing when that
20    was missing on that.
21       Q.   The third signature that I found within
22    Exhibit 1102 is Bates stamp CAI 015096 dated February
23    14, 2007.   Do you see that?
24       A.   Yes.
25       Q.   Is that your signature?

EXHIBIT 4
43

Amber Ivey

Page 131

```
1      A.    Yes.

2      Q.    And did you witness Mr. Holder's signature?

3      A.    No.

4      Q.    Is that your dating of 2/14/07?

5      A.    Yes.

6      Q.    Did you ever speak to anyone other than your

7  attorneys in this lawsuit regarding this issue of your

8  witnessing Mr. Holder's signatures on these policy

9  delivery receipts?

10     A.    Not that I recall, no.

11     Q.    Did you ever speak to anyone at Lincoln

12 National on that topic?

13     A.    No.

14     Q.    Did you ever speak to anyone at Summit

15 Alliance Financial on that topic?

16     A.    No, not that I recall.

17     Q.    Has anyone ever criticized you for signing

18 your name as witnessing Mr. Holder's signature?

19     A.    No.

20     Q.    Has anyone ever criticized you for putting

21 cut-and-paste signatures on policy illustrations

22 connected with the Gift of a Lifetime program?

23     A.    No.

24           (Deposition Exhibit 1183 marked.)

25     Q.    (BY MR. MORRIS)   I will mark as next in order
```

**EXHIBIT 4**
**44**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO  ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

_Stillwater, OK_

Signed at (City and State)

X _Thomas W. Allen_
Signature of Proposed Insured A  Thomas W. Allen

X _J. Mike Holder_
Signature of Applicant/Owner/Trustee (Provide Officer's Title if policy is owned by a Corporation)
J. Mike Holder, President

Witness _Amber Ivey_

Witness _Cray Clemons_

Witness _Cray Clemons_

Date _11-27-06_

Date _1-29-07_

DEPOSITION EXHIBIT
1101
Lee

35 OK

CAI 383

EXHIBIT 5
45

**⌂Lincoln**
Financial Group®

*LINCOLN UL LPR_7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| Insured: | Thomas Allen | | |
|---|---|---|---|
| Age: | 68 | Initial Death Benefit: | |
| Sex: | Male | Initial Death Benefit Opt: | $10,000,000 |
| Class: | Standard Best | Payment Mode: | Increase/Premium |
| | | Riders: | Annual |
| | | | None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL LPR_7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5  72 | 598,117 | 0 | | | | | | | |
| 10  77 | 598,117 | 0 | 690,786 | 1,172,873 | 1,202,449 | 12,990,585 | 12,990,585 | 12,990,585 | 12,990,585 |
| 15  82 | 598,117 | 0 | 1,634,801 | 3,265,589 | 3,390,806 | 15,981,171 | 15,981,171 | 15,981,171 | 15,981,171 |
| 20  87 | 0 | 0 | 859,587 | 5,089,010 | 5,430,295 | 18,971,756 | 18,971,756 | 18,971,756 | 18,971,756 |
| 30  97 | 0 | 0 | 0 | 942,283 | 1,685,373 | 18,971,756 | 18,971,756 | 18,971,756 | 18,971,756 |
| | | | 0 | 0 | 0 | 18,971,756 | 18,971,756 | 18,971,756 | 18,971,756 |
| 3  70 | 598,117 | 0 | | | | | | | |
| 8  75 | 598,117 | 0 | 244,416 | 458,452 | 470,166 | 11,794,351 | 11,794,351 | 11,794,351 | 11,794,351 |
| 13  80 | 598,117 | 0 | 1,314,376 | 2,379,030 | 2,455,548 | 14,784,936 | 14,784,936 | 14,784,936 | 14,784,936 |
| | | 0 | 1,617,805 | 4,535,713 | 4,770,691 | 17,775,522 | 17,775,522 | 17,775,522 | 17,775,522 |

Coverage lapses in year:  37    37    37    37    37    37    37    37

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07
Date          x _Thomas W. Allen_
              Signature of proposed insured(s)

1-29-07
Date          _J. Mike Holder_
              Signature of applicant/owner (if other than the proposed insured)  J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1-29-07
Date          _John Ridings Lee_
              Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

**EXHIBIT 5**
**46**

Jan 29 07 03:47p          MCG Dallas                214 528 4999              P.4

## FRAUD NOTICE

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal Income tax for failure to report interest or dividends.

## CERTIFICATIONS

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

## AUTHORIZATION

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefit under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☒DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

_____, Okla , Nov. 27, 06
(Name (City and State))

X _Bobby D. Anthony_                          _James R. Anthony_        11-27-06
Signature of Proposed Insured A  Bobby D. Anthony      Witness                  Date

X _C. Mike Holder_
Signature of Applicant/Owner/Trustee (Provide
Owner's Title if Policy is owned by a Corporation)      Witness                  1-29-07
J. Mike Holder, President                      Witness                  Date

35 OK                                              10/04

CONFIDENTIAL                                        CAI 590

**EXHIBIT 5**
47

02/28/2007 15:25 FAX 405 744 4885          OK STATE GOLF

Jan 29 07 03:46p          MCG Dallas          214 528 4999          @001

P.2

**∏ Lincoln**
*Financial Group*

**LINCOLN UL LPR_7**

A LIFE INSURANCE ILLUSTRATION
*Flexible Premium Adjustable Life Policy*

Prepared by: John Robbins Ins
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

Insured: Bobby Anthony
Age: 65
Sex: Male
Class: Preferred

Initial Death Benefit:
Initial Death Benefit Opt : $10,000,000
Payment Mode: Increase/Premium
Riders: Annual
None

**The Values**

### Section B: Summary of Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL LPR_7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Guaranteed Basis | Surrender Values | | | Death Benefit | | | |
| | | | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
|---|---|---|---|---|---|---|---|---|---|
| 5    69 | 387,828 | 0 | 360,784 | 748,331 | 769,338 | 11,939,141 | 11,939,141 | 11,939,141 | 11,939,141 |
| 10   74 | 387,828 | 0 | 1,073,507 | 2,329,532 | 2,367,712 | 13,878,281 | 13,878,283 | 13,878,281 | 13,878,281 |
| 15   79 | 387,828 | 0 | 911,528 | 3,834,130 | 4,062,002 | 15,817,422 | 15,817,422 | 15,817,422 | 15,817,422 |
| 20   84 | 0 | 0 | 0 | 0 | 2,742,736 | 15,817,422 | 15,817,423 | 15,817,422 | 15,817,422 |
| 30   94 | 0 | 0 | 0 | 0 | 0 | 15,817,422 | 15,817,422 | 15,817,422 | 15,817,422 |
| 1    65 | 387,828 | 0 | 0 | 0 | 0 | | | | |
| 6    70 | 387,828 | 0 | 527,086 | 1,027,409 | 1,057,401 | 10,387,828 | 10,387,828 | 10,387,828 | 10,387,828 |
| 11   75 | 387,828 | 0 | 1,164,138 | 2,619,939 | 2,729,374 | 12,326,969 | 12,326,969 | 12,326,969 | 12,326,969 |
| | | | | | | 14,266,109 | 14,266,109 | 14,266,109 | 14,266,109 |

Coverage lapses in year:          43          43          43          43          43          43          43          43

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07
Date

1-29-07
Date

X  _Bobby Anthony_
Signature of proposed insured

X  _J. Mike Holder_
Signature of applicant/owner (if other than the proposed insured)          J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1/24/07
Date

X  _John Robbins Ins_
Signature of licensed agent/representative

LLA0510-0566

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

Ty 35, 2007 10.17am

Page 5 of 13

**CONFIDENTIAL**          CAI 541

**EXHIBIT 5**
48

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☒DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Signed at (City and State) _Stillwater, OK -74074_

(X) _Paula B. Anthony_
Signature of Proposed Insured A Paula B. Anthony

_Bodley Strickong_
Witness

_11-27-2006_
Date

(X) _J. Mike Holder_
Signature of Applicant/Owner/Trustee (Provide Officer's Title if policy is owned by a Corporation.)
J. Mike Holder, President

_Dan Clemons_
Witness

_1-29-07_
Date

35 OK

**CONFIDENTIAL**

CAI  647

**EXHIBIT 5**
**49**


**Lincoln**
Financial Group®

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

### *LINCOLN UL*LPR-7

#### A LIFE INSURANCE ILLUSTRATION
*Flexible Premium Adjustable Life Policy*

| Insured: | Paula Anthony | | Initial Death Benefit: | $10,000,000 |
|---|---|---|---|---|
| Age: | 65 | | Initial Death Benefit Opt: | Increase/Premium |
| Sex: | Female | | Payment Mode: | Annual |
| Class: | Standard Best | | Riders: | None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL LPR-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5  69 | 343,094 | 0 | 171,182 | 425,494 | 441,179 | 11,715,469 | 11,715,469 | 11,715,469 | 11,715,469 |
| 10  74 | 343,094 | 0 | 872,046 | 1,653,438 | 1,719,673 | 13,430,937 | 13,430,937 | 13,430,937 | 13,430,937 |
| 15  79 | 343,094 | 0 | 1,238,015 | 2,934,481 | 3,109,360 | 15,146,406 | 15,146,406 | 15,146,406 | 15,146,406 |
| 20  84 | 0 | 0 | 0 | 1,721,432 | 2,057,980 | 15,146,406 | 15,146,406 | 15,146,406 | 15,146,406 |
| 30  94 | 0 | 0 | 0 | 0 | 0 | 15,146,406 | 15,146,406 | 15,146,406 | 15,146,406 |
| 1  65 | 343,094 | 0 | 0 | 0 | 0 | 10,343,094 | 10,343,094 | 10,343,094 | 10,343,094 |
| 6  70 | 343,094 | 0 | 312,868 | 651,964 | 674,304 | 12,058,562 | 12,058,562 | 12,058,562 | 12,058,562 |
| 11  75 | 343,094 | 0 | 987,331 | 1,906,489 | 1,988,825 | 13,774,031 | 13,774,031 | 13,774,031 | 13,774,031 |

Coverage lapses in year:   35   35   35   35   35   35   35   35

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| 1-29-07 | x _Paula B. Anthony_ |
|---|---|
| Date | Signature of proposed insured(s) |

| 1-29-07 | X _J. Mike Holder_   J. Mike Holder |
|---|---|
| Date | Signature of applicant/owner (if other than the proposed insured) |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| 1-29-07 | x _John Ridings Lee_ |
|---|---|
| Date | Signature of licensed agent/representative |

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

**CONFIDENTIAL**
Page 5 of 13

CAI 599

*January 25, 2007 10:18am*

**EXHIBIT 5**
**50**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that **(a)** the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and **(b)** the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATION**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Stillwater, Oklahoma
Dated at (City and State)

Signature of Proposed Insured A   Jane Armstrong     Witness     Date  11-13-06

Signature of Proposed Insured B     Witness     Date

Signature of Applicant/Owner/Trustee (Provide Officer's Title if policy is owned by a Corporation.)   Witness   Craig Clemons   Date  1-29-07

J. Mike Holder, President

35 OK                          10/04

**CONFIDENTIAL**                          CAI 974

**EXHIBIT 5**
**51**


**Lincoln**
Financial Group®

### LINCOLN UL<sup>LPR</sup>-7

#### A LIFE INSURANCE ILLUSTRATION
*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| | |
|---|---|
| Insured: Jane Armstrong | Initial Death Benefit: $10,000,000 |
| Age: 82 | Initial Death Benefit Opt.: Increase/Premium |
| Sex: Female | Payment Mode: Annual |
| Class: Standard | Riders: None |

### Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL<sup>LPR</sup>-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5 | 86 | 1,177,681 | 0 | 953,616 | 2,207,811 | 2,264,660 | 15,888,405 | 15,888,405 | 15,888,405 | 15,888,405 |
| 10 | 91 | 1,177,681 | 0 | 0 | 2,781,891 | 3,007,766 | 21,776,811 | 21,776,811 | 21,776,811 | 21,776,811 |
| 15 | 96 | 1,177,681 | 0 | 0 | 0 | 0 | 27,665,216 | 27,665,216 | 27,665,216 | 27,665,216 |
| 20 | 101 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 30 | 111 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 4 | 85 | 1,177,681 | 0 | 879,240 | 1,753,240 | 1,791,064 | 14,710,724 | 14,710,724 | 14,710,724 | 14,710,724 |
| 9 | 90 | 1,177,681 | 0 | 0 | 3,011,697 | 3,192,787 | 20,599,130 | 20,599,130 | 20,599,130 | 20,599,130 |
| 14 | 95 | 1,177,681 | 0 | 0 | 0 | 0 | 26,487,535 | 26,487,535 | 26,487,535 | 26,487,535 |

| Coverage lapses in year: | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
|---|---|---|---|---|---|---|---|---|

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07
Date
X _Jane E. Armstrong_

1-29-07
Date
X _J. Mike Holder_
Signature of applicant/owner (if other than the proposed insured)        J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1-29-07
Date
X _John Ridings Lee_
Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

**EXHIBIT 5**
**52**

Feb 12 07 02:43p          MCG Dallas                    214 528 4999                    p.4

B45—Page 5

**FRAUD NOTICE**

Any person who knowingly and with intent to defraud any Insurance Company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, as determined by a court of competent jurisdiction.

**Colorado** – It's unlawful to knowingly provide false, incomplete, misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Services.

**New Mexico, Oklahoma** – Any person who knowingly and with intent to defraud any insurance company or other person and who files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any false materials thereto commits a fraudulent insurance act which is a crime and subjects such person to criminal and civil penalties.

**CERTIFICATION:**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advice payment has been made or acknowledged below, and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION/DECLARATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf. I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request. I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., Information.   If an investigative consumer report is obtained, I/we- ☐ DO ☐ DO NOT request to be interviewed.

**DECLARATION FOR SVUL/VUL ONLY**

I/We declare there is a current need for life insurance. I/We understand that variable universal life is a life insurance policy. I/We understand that the cash value and Death Benefit proceeds of a variable universal life policy may increase or decrease based upon the investment experience of the sub-accounts, and that a decrease in cash value may cause a lapse in the policy and loss of life insurance coverage except as provided by any lapse protection provisions of my/our policy. I/We have been informed of the risks involved in this life insurance policy and I/we believe the SVUL product is suitable given my/our overall objective towards investing and time horizon.   I/We acknowledge receipt of the current Product Prospectus and Funds Prospectus(es).

Stillwater, OK
Dated at (City and State)

X  E. Lee Bocher                          Amber Drury                    1-12-07
Signature of Proposed Insured A                Witness                         Date
E. Lee Bocher

X  J. Mike Holder                         Vanessa Craft                  2-12-07
Signature of Applicant/Owner/Trustee/Trustee Officer's    Witness                  Date
Title (if other is noted as a Corporation)
J. Mike Holder, President .

Signature of Field Investment Reviewer        Witness                         Date
(complete for SVUL only)

B45

CONFIDENTIAL                                              CAI 1163

**EXHIBIT 5**
**53**

**∩ Lincoln**
Financial Group

*LINCOLN UL$^{LPR-7}$*

A LIFE INSURANCE ILLUSTRATION
*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3834 Oak Lawn
Ste 1459
Dallas, TX 75219
Tel. 214.522.7460

| Insured: E. Lee Bacher | Initial Death Benefit : | $10,000,000 |
| Age: 83 | Initial Death Benefit Opt : | Increase/Premium |
| Sex: Male | Payment Mode: | Annual |
| Class: Standard | Riders: | None |

---

### Section B:  Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL$^{LPR}$-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | | Death Benefit | | | |
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
|---|---|---|---|---|---|---|---|---|---|
| 5  | 87  | 2,392,024 | 1,396,277 | 4,463,344 | 6,715,563 | 6,868,664 | 21,460,119 | 21,460,119 | 21,460,119 | 21,460,119 |
| 10 | 92  | 2,392,024 | 0 | 0 | 7,859,183 | 8,675,962 | 32,920,238 | 32,920,238 | 32,920,238 | 32,920,238 |
| 15 | 97  | 2,392,024 | 0 | 0 | 0 | 0 | 44,380,357 | 44,380,357 | 44,380,357 | 44,380,357 |
| 20 | 102 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 30 | 112 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| | | | | | | | | | | |
| 3  | 85  | 2,392,024 | 2,166,269 | 3,278,516 | 4,183,878 | 4,242,258 | 16,876,071 | 16,876,071 | 16,876,071 | 16,876,071 |
| 8  | 90  | 2,392,024 | 0 | 2,559,713 | 8,748,509 | 9,163,891 | 28,336,190 | 28,336,190 | 28,336,190 | 28,336,190 |
| 13 | 95  | 2,392,024 | 0 | 0 | 0 | 12 | 39,796,309 | 39,796,309 | 39,796,309 | 39,796,309 |

| Coverage lapses in year: | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

2-12-07 _____ x E. Lee Bacher _____
Date                Signature of proposed insured(s)

2-12-07 _____ x J. Mike Holder _____   J. Mike Holder
Date                Signature of applicant/owner (if other than the proposed insured)

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change.  I have made no statements that are inconsistent with the illustration.  I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated  policy.

2-12-07 _____ x John Ridings Lee _____
Date                Signature of licensed agent/representative

                                      THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
LLA0510-0566                                    *a part of Lincoln National Corporation*

CONFIDENTIAL                              CAI 1171

**EXHIBIT 5**
**54**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAX PAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Dated at (City and State) _Stillwater, OK_

Signature of Proposed Insured A _Richard D. Boger_   Witness _Teresa Cowger_   Date _1/2V06_

Signature of Proposed Insured B _(X)_   Witness _Craig A. Cowger_   Date _1-29-07_

Signature of Applicant/Owner/Trustee (Provide Officer's Title if policy is owned by a Corporation)
J. Mike Holder, President

35 OK                    10/04

**CONFIDENTIAL**                    CAI 1352

**EXHIBIT 5**
**55**


**Lincoln**
Financial Group®

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

### *LINCOLN UL$^{LPR}$-7*

#### A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

| | |
|---|---|
| Insured: Richard Bogert | Initial Death Benefit: $10,000,000 |
| Age: 73 | Initial Death Benefit Opt.: Increase/Premium |
| Sex: Male | Payment Mode: Annual |
| Class: Preferred | Riders: None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL$^{LPR}$-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5   77 | 588,286 | 0 | 144,212 | 999,692 | 1,017,875 | 12,941,431 | 12,941,431 | 12,941,431 | 12,941,431 |
| 10   82 | 588,286 | 0 | 0 | 2,615,407 | 2,728,059 | 15,882,862 | 15,882,862 | 15,882,862 | 15,882,862 |
| 15   87 | 588,286 | 0 | 0 | 2,174,336 | 2,472,217 | 18,824,293 | 18,824,293 | 18,824,293 | 18,824,293 |
| 20   92 | 0 | 0 | 0 | 0 | 0 | 18,824,293 | 18,824,293 | 18,824,293 | 18,824,293 |
| 30   102 | 0 | 0 | 0 | 0 | 0 | 18,824,293 | 18,824,293 | 18,824,293 | 18,824,293 |
| 3   75 | 588,286 | 0 | 7,106 | 362,452 | 373,402 | 11,764,859 | 11,764,859 | 11,764,859 | 11,764,859 |
| 8   80 | 588,286 | 0 | 0 | 1,992,798 | 2,062,156 | 14,706,290 | 14,706,290 | 14,706,290 | 14,706,290 |
| 13   85 | 588,286 | 0 | 0 | 2,768,066 | 2,977,827 | 17,647,721 | 17,647,721 | 17,647,721 | 17,647,721 |
| Coverage lapses in year: | | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 |

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07
_____
Date

x _Richard D Bogart_____
Signature of proposed insured(s)

1-29-07
_____
Date

x _____   J. Mike Holder
Signature of applicant/owner (if other than the proposed insured)

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1-29-07
_____
Date

x _John Ridingshee_____
Signature of licensed agent/representative

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

LLA0510-0566

**EXHIBIT 5**
**56**

## FRAUD NOTICE
B45 - Page 5

Any person who knowingly and with intent to defraud any Insurance Company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, as determined by a court of competent jurisdiction.

Colorado – It is unlawful to knowingly provide false, incomplete, misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Services.

New Mexico, Oklahoma – Any person who knowingly and with intent to defraud any insurance company or other person and who files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any false materials thereto commits a fraudulent insurance act which is a crime and subjects such person to criminal and civil penalties.

## CERTIFICATIONS

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

## AUTHORIZATION/DECLARATION

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf. I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request. I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., Information. If an investigative consumer report is obtained, I/we ☐ DO ☐ DO NOT request to be interviewed.

## DECLARATION FOR SVUL/VUL ONLY

I/We declare there is a current need for life insurance. I/We understand that variable universal life is a life insurance policy. I/We understand that the cash value and Death Benefit proceeds of a variable universal life policy may increase or decrease based upon the investment experience of the sub-accounts, and that a decrease in cash value may cause a lapse in the policy and loss of life insurance coverage except as provided by any lapse protection provisions of my/our policy. I/We have been informed of the risks involved in this life insurance policy and I/we believe the S/VUL product is suitable given my/our overall objective towards investing and time horizon. I/We acknowledge receipt of the current Product Prospectus and Funds Prospectus(es).

Dated at *(City and State)*  12-13-06  Stillwater, OK

---

(X) *Andrew J Cummins*  
Signature of Proposed Insured A  Andrew Cummins

Witness  *Andrea L Malherbe*

Date  *Dec. 13 06*

---

Signature of Proposed Insured B  
(X) *J. Mike Holder*  
Signature of Applicant/Owner/Trustee *(Provide Officer's Title if policy is owned by a Corporation.)*  
· J. Mike Holder

Witness  *Craig Cremaks*

Date  1-29-07

---

Signature of Field Investment Reviewer  
*(complete for SVUL only)*

Witness

Date

B45

CONFIDENTIAL                           CAI  1574

**EXHIBIT 5**
**57**


**Lincoln**
Financial Group®

*LINCOLN UL^LPR_7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| Insured: | Andrew Cummins |
| Age: | 74 |
| Sex: | Male |
| Class: | Preferred Best |

| Initial Death Benefit: | $10,000,000 |
| Initial Death Benefit Opt.: | Increase/Premium |
| Payment Mode: | Annual |
| Riders: | None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^LPR_7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | | Death Benefit | | | |
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
|---|---|---|---|---|---|---|---|---|---|
| 5  | 78  | 530,558 | 0 | 0 | 701,364 | 723,626 | 12,652,791 | 12,652,791 | 12,652,791 | 12,652,791 |
| 10 | 83  | 530,558 | 0 | 0 | 1,862,000 | 1,952,711 | 15,305,581 | 15,305,581 | 15,305,581 | 15,305,581 |
| 15 | 88  | 530,558 | 0 | 0 | 939,146 | 1,165,481 | 17,958,372 | 17,958,372 | 17,958,372 | 17,958,372 |
| 20 | 93  | 0 | 0 | 0 | 0 | 0 | 17,958,372 | 17,958,372 | 17,958,372 | 17,958,372 |
| 30 | 103 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 2  | 75  | 530,558 | 0 | 0 | 0 | 0 | 11,061,116 | 11,061,116 | 11,061,116 | 11,061,116 |
| 7  | 80  | 530,558 | 0 | 0 | 1,231,009 | 1,273,691 | 13,713,907 | 13,713,907 | 13,713,907 | 13,713,907 |
| 12 | 85  | 530,558 | 0 | 0 | 1,912,218 | 2,048,653 | 16,366,697 | 16,366,697 | 16,366,697 | 16,366,697 |
| Coverage lapses in year: | | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 |

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07
Date

x _Andrew Cummins_
Signature of proposed insured(s)

1-29-07
Date

x _J. Mike Holder_
Signature of applicant/owner (if other than the proposed insured)   J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1-29-07
Date

x _John Ridings Lee_
Signature of licensed agent/representative

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

LLA0510-0566

**CONFIDENTIAL**

CAI 1509

*February 1, 2007 11:40am*

v2006.4.1

**EXHIBIT 5**
58

**FRAUD NOTICE**
B45 - Page 5

Any person who knowingly and with intent to defraud any insurance Company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, as determined by a court of competent jurisdiction.

**Colorado** – It is unlawful to knowingly provide false, incomplete, misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Services.

**New Mexico, Oklahoma** – Any person who knowingly and with intent to defraud any insurance company or other person and who files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any false materials thereto commits a fraudulent insurance act which is a crime and subjects such person to criminal and civil penalties.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION/DECLARATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf. I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request. I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., Information.   If an investigative consumer report is obtained, I/we ☐ DO ☐ DO NOT request to be interviewed.

*DECLARATION FOR S/VUL/VUL ONLY*

I/We declare there is a current need for life insurance.   I/We understand that variable universal life is a life insurance policy. I/We understand that the cash value and Death Benefit proceeds of a variable universal life policy may increase or decrease based upon the investment experience of the sub-accounts, and that a decrease in cash value may cause a lapse in the policy and loss of life insurance coverage except as provided by any lapse protection provisions of my/our policy. I/We have been informed of the risks involved in this life insurance policy and I/we believe the S/VUL product is suitable given my/our overall objective towards investing and time horizon. I/We acknowledge receipt of the current Product Prospectus and Funds Prospectus(es).

Stillwater, OK
Dated at (City and State)

X _Donna L. Cummins_  _Andrea L Malherbe_  _12/13/06_
Signature of Proposed Insured A  Donna L. Cummins    Witness      Date

X _J. Mike Holder_  _(Pay Demons)_  _1-29-07_
Signature of Applicant/Owner/Trustee (Provide Officer's   Witness      Date
Title if policy is owned by a Corporation)
J. Mike Holder, President

Signature of Field Investment Reviewer   Witness      Date
(complete for S/VUL only)

B45

**CONFIDENTIAL**

**CAI 1624**

1/27/10 LINCOLN NAT CONTRACTS-CUMMINS, DONNA LN POLICY

**EXHIBIT 5**
**59**

Feb.01 07 11:39a     MCG Dallas          214 528 4989          P.2

**Lincoln**
Financial Group®

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel 214.522.7400

*LINCOLN UL^LPR_7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

| | |
|---|---|
| Insured: Donna Cummins | Annual Death Benefit: $10,000,000 |
| Age: 68 | Initial Death Benefit Opt.: Increase/Premium |
| Sex: Female | Payment Mode: Annual |
| Class: Preferred Best | Riders: None |

## Section B:  Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^LPR-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5 | 72 | 301,451 | 0 | 0 | 256,094 | 268,846 | 11,507,257 | 11,507,257 | 11,507,257 | 11,507,257 |
| 10 | 77 | 301,451 | 0 | 67,835 | 1,238,243 | 1,291,641 | 13,014,513 | 13,014,513 | 13,014,513 | 13,014,513 |
| 15 | 82 | 301,451 | 0 | 0 | 2,093,994 | 2,236,215 | 14,521,770 | 14,521,770 | 14,521,770 | 14,521,770 |
| 20 | 87 | 0 | 0 | 0 | 462,011 | 723,583 | 14,521,770 | 14,521,770 | 14,521,770 | 14,521,770 |
| 30 | 97 | 0 | 0 | 0 | 0 | 0 | 14,521,770 | 14,521,770 | 14,521,770 | 14,521,770 |
| 3 | 70 | 301,451 | 0 | 0 | 0 | 0 | 10,904,354 | 10,904,354 | 10,904,354 | 10,904,354 |
| 8 | 75 | 301,451 | 0 | 45,104 | 835,869 | 868,577 | 12,411,611 | 12,411,611 | 12,411,611 | 12,411,611 |
| 13 | 80 | 301,451 | 0 | 0 | 1,803,334 | 1,900,927 | 13,918,867 | 13,918,867 | 13,918,867 | 13,918,867 |

Coverage lapses in year:   38      38      38      38      38      38      38      38

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

2-1-07      x _Donna S. Cummins_
Date         Signature of proposed insured(s)

2-1-07      x _J. Mike Holder_
Date         Signature of applicant/owner (if other than the proposed insured)    J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

2-1-07      x _John Ridings Lee_
Date         Signature of licensed agent/representative

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
a part of Lincoln National Corporation

LLA0510-0566

*January 1, 2007 11:23am*                    Page 5 of 13                    v2006.4.1

CONFIDENTIAL                              CAI 1522

EXHIBIT 5
60

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

Under penalties of perjury, it is certified that (a) the social security or employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree: 1) that this Application shall form a part of any Policy issued; and 2) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract or waive any of the Company's rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below) and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me; and 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of this application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurer, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐ DO ☐ DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Stillwater, OK
Signature of Proposed Insured A   Richard Daniel   Witness   Jenifer Huey   Date 1-13-06

Signature of Proposed Insured B   Witness   Date

Signature of Applicant/Owner/Trustee (Provide Officer's Title if Policy is owned by a Corporation)   Witness   Cody Cenal   Date 1-29-07
J. Mike Holder, President

an ok.

CONFIDENTIAL                                    CAI 1943

EXHIBIT 5
61


**Lincoln**
Financial Group®

### LINCOLN UL$^{LPR}$-7

#### A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| | |
|---|---|
| Insured: Richard Danel | Initial Death Benefit: $10,000,000 |
| Age: 73 | Initial Death Benefit Opt.: Increase/Premium |
| Sex: Male | Payment Mode: Annual |
| Class: Standard | Riders: None |

---

### Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL$^{LPR}$-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5 | 77 | 889,755 | 0 | 1,024,990 | 1,744,515 | 1,787,102 | 14,448,776 | 14,448,776 | 14,448,776 | 14,448,776 |
| 10 | 82 | 889,755 | 0 | 1,235,118 | 4,080,893 | 4,259,277 | 18,897,553 | 18,897,553 | 18,897,553 | 18,897,553 |
| 15 | 87 | 889,755 | 0 | 0 | 3,243,395 | 3,737,803 | 23,346,329 | 23,346,329 | 23,346,329 | 23,346,329 |
| 20 | 92 | 0 | 0 | 0 | 0 | 0 | 23,346,329 | 23,346,329 | 23,346,329 | 23,346,329 |
| 30 | 102 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 3 | 75 | 889,755 | 91,247 | 515,230 | 815,624 | 832,711 | 12,669,266 | 12,669,266 | 12,669,266 | 12,669,266 |
| 8 | 80 | 889,755 | 0 | 1,452,511 | 3,197,329 | 3,306,503 | 17,118,042 | 17,118,042 | 17,118,042 | 17,118,042 |
| 13 | 85 | 889,755 | 0 | 0 | 4,203,900 | 4,544,451 | 21,566,818 | 21,566,818 | 21,566,818 | 21,566,818 |

| Coverage lapses in year: | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 |
|---|---|---|---|---|---|---|---|---|

**NOTE:** If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| | |
|---|---|
| *1-29-07* | x _Richard Danel_ |
| Date | Signature of proposed insured(s) |
| 1-29-07 | x _Mike Holder_ |
| Date | Signature of applicant/owner (if other than the proposed insured)   J. Mike Holder |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| | |
|---|---|
| *1-29-07* | x _John Ridings Lee_ |
| Date | Signature of licensed agent/representative |

LLA0510-0566

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

January 25, 2007 10:24am

CAI 1951

v2006 4.1

**EXHIBIT 5**
62

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATION**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Dated at (City and State) _Stillwater, OK_

Signature of Proposed Insured A  _Janelle Eichor_   Witness _Amber Ivey_   Date _11-17-06_

Signature of Proposed Insured B

Signature of Applicant/Owner/Trustee (Provide   Witness _Chris Reynolds_   Date _1-29-07_
Officer's Title if policy is owned by a Corporation.)
J. Mike Holder, President

35 OK

10/04
**CONFIDENTIAL**

CAI 2297

**EXHIBIT 5**
**63**

 **Lincoln**
Financial Group®

*LINCOLN UL*<sup>LPR</sup>*_7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by:   John Ridings Lee
3338 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| | |
|---|---|
| Insured: Janelle Eichor | Initial Death Benefit:          $10,000,000 |
| Age:    74 | Initial Death Benefit Opt.:    Increase/Premium |
| Sex:    Female | Payment Mode:                   Annual |
| Class:  Standard Best | Riders:                         None |

### Section B. Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL<sup>LPR</sup>-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5   78 | 464,740 | 0 | 0 | 416,369 | 433,948 | 12,323,700 | 12,323,700 | 12,323,700 | 12,323,700 |
| 10  83 | 464,740 | 0 | 0 | 1,199,004 | 1,266,354 | 14,647,399 | 14,647,399 | 14,647,399 | 14,647,399 |
| 15  88 | 464,740 | 0 | 0 | 764,743 | 925,056 | 16,971,099 | 16,971,099 | 16,971,099 | 16,971,099 |
| 20  93 | 0 | 0 | 0 | 0 | 0 | 16,971,099 | 16,971,099 | 16,971,099 | 16,971,099 |
| 30  103 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| | | | | | | | | | |
| 2   75 | 464,740 | 0 | 0 | 0 | 0 | 10,929,480 | 10,929,480 | 10,929,480 | 10,929,480 |
| 7   80 | 464,740 | 0 | 0 | 775,951 | 808,962 | 13,253,180 | 13,253,180 | 13,253,180 | 13,253,180 |
| 12  85 | 464,740 | 0 | 0 | 1,330,326 | 1,428,988 | 15,576,879 | 15,576,879 | 15,576,879 | 15,576,879 |
| Coverage lapses in year: | | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| 1-29-07 | x _Janelle Eichor_ |
|---|---|
| Date | Signature of proposed insured(s) |
| 1-29-07 | x _J. Mike Holder_ |
| Date | Signature of applicant/owner (if other than the proposed insured)J. Mike Holder |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| 1-29-07 | x _John Ridings Lee_ |
|---|---|
| Date | Signature of licensed agent/representative |

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

LLA0510-0566

**EXHIBIT 5**
**64**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WB further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WB have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WB authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WB understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐ DO  ☐ DO NOT request to be interviewed.

I/WB ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Dated at (City and State) _Stillwater, Oklahoma_

X _Janet Evans_  Witness _____  Date _Nov 16, 2006_
Signature of Proposed Insured A   Janet Evans

Signature of Proposed Insured B _____  Witness _____  Date _1-29-07_

Signature of Applicant/Owner/Trustee (Provide Officer's Title if policy is owned by a Corporation)
J. Mike Holder, President

35 OK                                    10/04
                              **CONFIDENTIAL**                     CAI 2352

**EXHIBIT 5**
**65**

02/12/2007 08:30 FAX 405 744 4985     OK STATE GOLF                    Ø004

Feb 09 07 03:07p    MCG Dallas              214 528 4999              P.4

**Lincoln**
Financial Group®

*LINCOLN UL^{LPR}-7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7650

| | |
|---|---|
| Insured: Janet Evans | Initial Death Benefit: $10,000,000 |
| Age: 79 | Initial Death Benefit Opt.: Increase/Premium |
| Sex: Female | Payment Mode: Annual |
| Class: Standard | Riders: None |

## Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^{LPR}-7. The surrender values
and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5   83 | 686,022 | 0 | 0 | 745,000 | 772,009 | 13,430,111 | 13,430,111 | 13,430,111 | 13,430,111 |
| 10  88 | 686,022 | 0 | 0 | 864,707 | 949,960 | 16,860,222 | 16,860,222 | 16,860,222 | 16,860,222 |
| 15  93 | 686,022 | 0 | 0 | 0 | 0 | 20,290,333 | 20,290,333 | 20,290,333 | 20,290,333 |
| 20  98 | 0 | 0 | *0* | *0* | *0* | 20,290,353 | 20,290,353 | 20,290,353 | 20,290,353 |
| 30+ 108 | 0 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 2  80 | 686,022 | 0 | 0 | 52,494 | 58,562 | 11,372,044 | 11,372,044 | 11,372,044 | 11,372,044 |
| 7  85 | 686,022 | 0 | 0 | 1,019,098 | 1,068,650 | 14,802,155 | 14,802,155 | 14,802,155 | 14,802,155 |
| 12  90 | 686,022 | 0 | 0 | 0 | 43 | 18,232,266 | 18,232,266 | 18,232,266 | 18,232,266 |

Coverage lapses in year:   21      21      21      21      21      21      21      21

NOTE:  If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value
or fund value. "0" in the fund value column may indicate a negative number.  If "0" appears in any of the above columns, the policy is
lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and
could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this
illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to
consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

2-8-07          x *Janet Evans*
Date            Signature of proposed insured

2-8-07          x *[signature]*                    J. Mike Holder
Date            Signature of applicant/owner (if other than the proposed insured)

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements
illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the
applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

2-8-07          x *John Ridings Lee*
Date            Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

*[illegible]*                    Page 5 of 11

**CONFIDENTIAL**                                   **CAI 2359**

**EXHIBIT 5**
**66**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Dated at (City and State) _Stillwater, OK_

Signature of Proposed Insured A _Martin Glass, Jr._   Witness   Date _11-14-06_

Signature of Proposed Insured B

Signature of Applicant/Owner/Trustee (Provide   Witness _Craig Edwards_   Date _1-29-07_
Officer's Title if policy is owned by a Corporation.)
J. Mike Holder, President

35 OK

10/04
**CONFIDENTIAL**

CAI 2609

**EXHIBIT 5**
67

02/01/2007 12:31 FAX 405 744 4985      OK STATE GOLF                    001
Feb 01 07 12:25p      MCG Dallas                    214 528 4999           p.2

**Lincoln**
Financial Group

*LINCOLN UL^LPR_7*

A LIFE INSURANCE ILLUSTRATION
*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1420
Dallas, TX 75319
Tel: 214.522.7460

| | |
|---|---|
| Insured  Marlin Glass | Initial Death Benefit          $10,000,000 |
| Age:  73 | Initial Death Benefit Opt.  Increase/Premium |
| Sex:  Male | Payment Mode:                Annual |
| Class:  Standard Best | Riders:                          None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^LPR_7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5   77 | 743,638 | 0 | 475,772 | 1,300,820 | 1,334,329 | 13,718,191 | 13,718,191 | 13,718,191 | 13,718,191 |
| 10  82 | 743,638 | 0 | 753,226 | 3,521,629 | 3,462,497 | 17,436,382 | 17,436,382 | 17,436,382 | 17,436,382 |
| 15  87 | 743,636 | 0 | 0 | 2,737,230 | 3,123,707 | 21,154,573 | 21,154,573 | 21,154,573 | 21,154,573 |
| 20  92 | 0 | 0 | 0 | 0 | *0* | 21,154,573 | 21,154,573 | 21,154,573 | 21,154,573 |
| 30 102 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 3  75 | 743,638 | 0 | 288,110 | 533,433 | 546,934 | 12,230,915 | 12,230,915 | 12,230,915 | 12,230,915 |
| 8  80 | 743,638 | 0 | 574,016 | 2,541,855 | 2,627,961 | 15,949,105 | 15,949,105 | 15,949,105 | 15,949,105 |
| 13 85 | 743,638 | 0 | 0 | 3,503,030 | 3,770,429 | 19,667,296 | 19,667,296 | 19,667,296 | 19,667,296 |

| Coverage lapses in year: | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 |
|---|---|---|---|---|---|---|---|---|

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

2-1-07 ___ x _Marlin Glass_ _____
Date         Signature of proposed insured

2-1-07 ___ x _____
Date         Signature of applicant/owner (if other than the proposed insured)  J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

2-1-07 ___ _John Ridings Lee_ _____
Date         Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

CONFIDENTIAL                    CAI 2616

**EXHIBIT 5
68**

## FRAUD NOTICE

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

## CERTIFICATION

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

## AUTHORIZATION

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO  ☑DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

_Stillwater, OK_
Executed at (City and State)

(X) _Connie Mashburn_          Witness _Amber Ivey_          Date _11-15-06_
Signature of Proposed Insured A
Connie Mashburn Cm

(X) _Mike Holder_          Witness _Cay Clemons_          Date _1-29-07_
Signature of Proposed Insured B
Signature of Applicant/Owner/Trustee (Provide
Officer's Title if policy is owned by a Corporation)
J. Mike Holder, President

35 OK                    CONFIDENTIAL                    CAI 3043
                              10/04

EXHIBIT 5
69

 **Lincoln**
Financial Group®

*LINCOLN UL^{LPR}_7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| | |
|---|---|
| Insured: Connie Mashburn | |
| Age: 68 | Initial Death Benefit: $10,000,000 |
| Sex: Female | Initial Death Benefit Opt.: Increase/Premium |
| Class: Standard Best | Payment Mode: Annual |
| | Riders: None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^{LPR}_7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
|---|---|---|---|---|---|---|---|---|---|
| 5  72 | 398,562 | 0 | 216,852 | 560,860 | 578,920 | 11,992,809 | 11,992,809 | 11,992,809 | 11,992,809 |
| 10  77 | 398,562 | 0 | 796,786 | 1,881,124 | 1,957,260 | 13,985,618 | 13,985,618 | 13,985,618 | 13,985,618 |
| 15  82 | 398,562 | 0 | 543,772 | 2,959,404 | 3,159,052 | 15,978,427 | 15,978,427 | 15,978,427 | 15,978,427 |
| 20  87 | 0 | 0 | 0 | 598,036 | 989,888 | 15,978,427 | 15,978,427 | 15,978,427 | 15,978,427 |
| 30  97 | 0 | 0 | 0 | 0 | 0 | 15,978,427 | 15,978,427 | 15,978,427 | 15,978,427 |
| 3  70 | 398,562 | 0 | 0 | 98,239 | 105,361 | 11,195,685 | 11,195,685 | 11,195,685 | 11,195,685 |
| 8  75 | 398,562 | 0 | 606,304 | 1,346,836 | 1,393,557 | 13,188,494 | 13,188,494 | 13,188,494 | 13,188,494 |
| 13  80 | 398,562 | 0 | 839,998 | 2,607,010 | 2,747,253 | 15,181,303 | 15,181,303 | 15,181,303 | 15,181,303 |
| Coverage lapses in year: | | 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 |

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0*" appears in any of the above columns, the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) that they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

2-14-07
Date

x _Connie Mashburn_
Signature of proposed insured(s)

2-14-07
Date

x _O. Mike Odle_
Signature of applicant/owner (if other than the proposed insured)

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

2-14-07
Date

x _John Ridings Lee_
Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

**CONFIDENTIAL**

**CAI 3051**

Page 6 of 13

**EXHIBIT 5**
**70**

## FRAUD NOTICE

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

## CERTIFICATIONS

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

## AUTHORIZATION

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO  ☐DO NOT  request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Stillwater Okla
Dated at (City and State)

| | | |
|---|---|---|
| Signature of Proposed Insured A  Marilynn A. McAfee | Witness  Amber Ivey | Date  11-16-06 |
| Signature of Applicant/Owner/Trustee (Provide Officer's Title if Policy is owned by a Corporation)  J. Mike Holder, President | Witness  Gary Clemons | Date  1-29-07 |

35 OK

10/04
**CONFIDENTIAL**

CAI 3274

**EXHIBIT 5**
71

01/29/2007 15:26 FAX 405 744 4985     OK STATE GOLF                    ☒004
Jan 29 07 03:47p     MCG Dallas                214 528 4399              p.5

**⌂Lincoln**
Financial Group℠

*LINCOLN UL^LPR-7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
1438 Oak Lawn
Ste 1400
Dallas, TX 72319
Tel: 214.522.7460

| | |
|---|---|
| Insured: Marilynn McAfee | |
| Age: 69 | Initial Death Benefit: $10,000,000 |
| Sex: Female | Initial Death Benefit Opt.: Increase/Premium |
| Class: Preferred Best | Payment Mode: Annual |
| | Riders: None |

---

### Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^LPR-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5   73 | 307,152 | 0 | 0 | 0 | 231,695 | 11,535,758 | 11,535,758 | 11,535,758 | 11,535,758 |
| 10  78 | 307,152 | 0 | 0 | 219,346 | 1,189,516 | 13,071,516 | 13,071,516 | 13,071,516 | 13,071,516 |
| 15  83 | 307,152 | 0 | 0 | 1,136,656 | 1,999,672 | 14,607,274 | 14,607,274 | 14,607,274 | 14,607,274 |
| 20  88 | 0 | 0 | 0 | 1,868,674 | 0 | 14,607,274 | 14,607,274 | 14,607,274 | 14,607,274 |
| 30  98 | 0 | 0 | 0 | 0 | 11 | 14,607,274 | 14,607,274 | 14,607,274 | 14,607,274 |
| | | | | | | | | | |
| 2   70 | 307,152 | 0 | 0 | 0 | 0 | 10,614,303 | 10,614,303 | 10,614,303 | 10,614,303 |
| 7   75 | 307,152 | 0 | 0 | 572,835 | 596,639 | 12,130,061 | 12,130,061 | 12,130,061 | 12,130,061 |
| 12  80 | 307,152 | 0 | 0 | 1,489,373 | 1,566,348 | 13,685,819 | 13,685,819 | 13,685,819 | 13,685,819 |

Coverage lapses in year:       33       33       33       33       33       33       33       33

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| | |
|---|---|
| *1-29-07* | X *Marilenn A. McAfee* |
| Date | Signature of proposed insured(s) |
| *1-29-07* | X *J. Mike Holder* |
| Date | Signature of applicant/owner (if other than the proposed insured)   J. Mike Holder |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| | |
|---|---|
| *1-29-07* | X *John Ridings Lee* |
| Date | Signature of licensed agent/representative |

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

CONFIDENTIAL          CAI 3201

**EXHIBIT 5**
**72**

**FRAUD NOTICE**
Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**
Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**
I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**
The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WB ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Signed at (City and State)   _Stillwater, OK_

Signature of Proposed Insured A _____   Witness _____   Date  _6-16-06_
Ronald O. McAfee

Signature of Proposed Insured B _____   Witness _____
Signature of Applicant/Owner/Trustee (Provide   Witness _____   Date  _1-29-07_
Officer's Title if Policy is owned by a Corporation)
J. Mike Holder, President

EXHIBIT 5
73

01/29/2007 15:25 FAX 405 744 4985      OK STATE GOLF                          ☒002
Jan 29 07 03:46p      MCG Dallas                    214 528 4999        P. 9

**◫Lincoln**
Financial Group®

Prepared by: John Radinge Lee
                3938 Oak Lawn
                Ste 1450
                Dallas, TX 75219
                Tel: 214.522.3400

*LINCOLN UL¹PR.7*
A LIFE INSURANCE ILLUSTRATION
*Flexible Premium Adjustable Life Policy*

| Insured: Ronald McAfee | | Initial Death Benefit: | $10,000,000 |
| Age: 71 | | Initial Death Benefit Opt.: | Increase/Premium |
| Sex: Male | | Payment Mode: | Annual |
| Class: Preferred Best | | Riders: | None |

---

### Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL¹ᴾᴿ.7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5    75 | 461,317 | 0 | 0 | 0 | 0 | | | | |
| 10   80 | 461,317 | 0 | 0 | 580,000 | 599,464 | 12,306,587 | 12,306,587 | 12,306,587 | 12,306,587 |
| 15   85 | 461,317 | 0 | 0 | 1,915,551 | 1,995,981 | 14,613,174 | 14,613,174 | 14,613,174 | 14,613,174 |
| 20   90 | 0 | 0 | 0 | 2,341,538 | 2,555,257 | 16,919,762 | 16,919,762 | 16,919,762 | 16,919,762 |
| 30   100 | 0 | *0* | *0* | 0 | *0* | 16,919,762 | 16,919,762 | 16,919,762 | 16,919,762 |
| | | | | | *0* | *0* | *0* | *0* | *0* |
| 5    73 | 461,317 | 0 | 0 | 580,000 | 599,464 | 12,306,587 | 12,306,587 | | |
| 10   80 | 461,317 | 0 | 0 | 1,915,551 | 1,995,981 | 14,613,174 | 14,613,174 | 14,613,174 | 14,613,174 |
| 15   85 | 461,317 | 0 | 0 | 2,341,538 | 2,555,257 | 16,919,762 | 16,919,762 | 16,919,762 | 16,919,762 |

| Coverage lapses in year: | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |

**NOTE:** If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07      x _Ronald M'Afee_
Date         Signature of proposed insured(s)

1-29-07      x) _J. Mike Holder_
Date         Signature of applicant/owner (if other than the proposed insured)   J. Mike Holder   ←

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1-29-07      _John Radinge Lee_
Date         Signature of licensed agent/representative

                        **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
LLA0510-0566                *a part of Lincoln National Corporation*

**CONFIDENTIAL**                          **CAI 3212**

**EXHIBIT 5**
**74**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO  ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Signed at *(City and State)* _Stillwater, OK._

(X) *Anna McCormick*                 Witness *Amber Ivey*              Date 11-15-06
Signature of Proposed Insured A
Anna McCormick

(X) *J. Mike Holder*                 Witness *Gary D. Clemons*          Date 1-29-07
Signature of Applicant/Owner/Trustee *(Provide          Witness
Officer's Title if policy is owned by a Corporation.)*
J. Mike Holder, President

35 OK                              10/04                      CAI 3626
                              CONFIDENTIAL

EXHIBIT 5
75


**Lincoln**
Financial Group®

*LINCOLN UL$^{LPR}$-7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| Insured: | Anna McCormick | Initial Death Benefit: | $10,000,000 |
| Age: | 71 | Initial Death Benefit Opt.: | Increase/Premium |
| Sex: | Female | Payment Mode: | Annual |
| Class: | Standard Best | Riders: | None |

### Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL$^{LPR}$-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5   75 | 467,620 | 0 | 205,277 | 648,071 | 668,691 | 12,338,098 | 12,338,098 | 12,338,098 | 12,338,098 |
| 10   80 | 467,620 | 0 | 517,292 | 1,948,897 | 2,032,983 | 14,676,196 | 14,676,196 | 14,676,196 | 14,676,196 |
| 15   85 | 467,620 | 0 | 0 | 2,727,290 | 2,945,160 | 17,014,293 | 17,014,293 | 17,014,293 | 17,014,293 |
| 20   90 | 0 | 0 | 0 | 0 | 0 | 17,014,293 | 17,014,293 | 17,014,293 | 17,014,293 |
| 30   100 | 0 | 0 | 0 | 0 | 0 | 17,014,293 | 17,014,293 | 17,014,293 | 17,014,293 |
| 5   75 | 467,620 | 0 | 205,277 | 648,071 | 668,691 | 12,338,098 | 12,338,098 | 12,338,098 | 12,338,098 |
| 10   80 | 467,620 | 0 | 517,292 | 1,948,897 | 2,032,983 | 14,676,196 | 14,676,196 | 14,676,196 | 14,676,196 |
| 15   85 | 467,620 | 0 | 0 | 2,727,290 | 2,945,160 | 17,014,293 | 17,014,293 | 17,014,293 | 17,014,293 |
| Coverage lapses in year: | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 |

**NOTE:** If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| 1-29-07 | x _Anna McCormick_ |
|---|---|
| Date | Signature of proposed insured(s) |
| 1-29-07 | (X) _J. Mike Holder_ |
| Date | Signature of applicant/owner (if other than the proposed insured) J. Mike Holder |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| 1-29-07 | x _John Ridings Lee_ |
|---|---|
| Date | Signature of licensed agent/representative |

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
(1/25/2007) (v2006.4.1) A2010001    *a part of Lincoln National Corporation*
**CONFIDENTIAL**

LLA0510-0566
*January 25, 2007 12:05pm*

Page 5 of 13

v2006.4.1

**EXHIBIT 5
76**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATION**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Dated (City and State)  *Stillwater, OK*

X *Jan Patton*
Signature of Proposed Insured A   Jon Patton

Witness  *Amber Ivey*

Date  *11-13-06*

X *J. Mike Holder*
Signature of Applicant/Owner/Trustee (Provide Officer's Title if policy is owned by a Corporation)
J. Mike Holder, President

Witness  *Craig Cignilis*

Date  *1-29-07*

35 OK

10/04

CONFIDENTIAL

CAI 4090

EXHIBIT 5
77



Financial Group®

*LINCOLN UL* *LPR*-7

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| Insured: Jon Patton | Initial Death Benefit: | $10,000,000 |
| Age: 72 | Initial Death Benefit Opt.: | Increase/Premium |
| Sex: Male | Payment Mode: | Annual |
| Class: Preferred | Riders: | None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL*LPR*-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5    76 | 516,402 | 0 | 0 | 742,771 | 765,539 | 12,582,010 | 12,582,010 | 12,582,010 | 12,582,010 |
| 10   81 | 516,402 | 0 | 0 | 2,127,361 | 2,220,413 | 15,164,020 | 15,164,020 | 15,164,020 | 15,164,020 |
| 15   86 | 516,402 | 0 | 0 | 1,910,261 | 2,153,778 | 17,746,030 | 17,746,030 | 17,746,030 | 17,746,030 |
| 20   91 | 0 | 0 | 0 | 0 | 0 | 17,746,030 | 17,746,030 | 17,746,030 | 17,746,030 |
| 30  101 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 4    75 | 516,402 | 0 | 0 | 475,584 | 490,759 | 12,065,608 | 12,065,608 | 12,065,608 | 12,065,608 |
| 9    80 | 516,402 | 0 | 0 | 1,857,277 | 1,931,195 | 14,647,618 | 14,647,618 | 14,647,618 | 14,647,618 |
| 14   85 | 516,402 | 0 | 0 | 2,220,351 | 2,426,367 | 17,229,628 | 17,229,628 | 17,229,628 | 17,229,628 |
| Coverage lapses in year: | | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 |

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07
Date

X _Jon Patton_

Signature of proposed insured(s)

1-29-07
Date

X _J. Mike Holder_

Signature of applicant/owner (if other than the proposed insured)   J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1-29-07
Date

X _John Ridings Lee_

Signature of licensed agent/representative

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

LLA0510-0566

CONFIDENTIAL

*January 25, 2007 10:58am*

CAI 4036

*v2006.4.1*

**EXHIBIT 5**
**78**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, x) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WB further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/we will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Signed at (City and State)  *Stillwater, OK*

Signature of Proposed Insured A *Nancy L. Patton*    Witness *Amber Ivey*    Date *12-11-06*

Signature of Proposed Insured B

Signature of Applicant/Owner/Trustee (Provide Officer's Title if policy is owned by a Corporation.)    Witness *Craig Clemds*    Date *1-09-07*
J. Mike Holder, President

**EXHIBIT 5**
79


**Lincoln**
Financial Group™

*LINCOLN UL$^{LPR}$-7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| | |
|---|---|
| Insured: Nancy Patton | |
| Age: 72 | |
| Sex: Female | |
| Class: Standard | |

| | |
|---|---|
| Initial Death Benefit: | $10,000,000 |
| Initial Death Benefit Opt.: | Increase/Premium |
| Payment Mode: | Annual |
| Riders: | None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL$^{LPR}$-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5  76 | 530,959 | 0 | 238,751 | 667,943 | 689,842 | 12,654,797 | 12,654,797 | 12,654,797 | 12,654,797 |
| 10  81 | 530,959 | 0 | 531,219 | 1,936,021 | 2,024,419 | 15,309,594 | 15,309,594 | 15,309,594 | 15,309,594 |
| 15  86 | 530,959 | 0 | 0 | 2,480,272 | 2,709,271 | 17,964,391 | 17,964,391 | 17,964,391 | 17,964,391 |
| 20  91 | 0 | 0 | 0 | 0 | 0 | 17,964,391 | 17,964,391 | 17,964,391 | 17,964,391 |
| 30  101 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 4  75 | 530,959 | 0 | 115,044 | 416,061 | 430,705 | 12,123,838 | 12,123,838 | 12,123,838 | 12,123,838 |
| 9  80 | 530,959 | 0 | 547,363 | 1,691,846 | 1,762,266 | 14,778,634 | 14,778,634 | 14,778,634 | 14,778,634 |
| 14  85 | 530,959 | 0 | 0 | 2,556,717 | 2,749,893 | 17,433,431 | 17,433,431 | 17,433,431 | 17,433,431 |
| Coverage lapses in year: | | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

*1-29-07*

*1-29-07*
Date

x. *Nancy L. Patton*
Signature of proposed insured(s)

x *J. Mike Holder*
Signature of applicant/owner (if other than the proposed insured)     J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

*1-29-07*
Date

x *John Ridings Lee*
Signature of licensed agent/representative

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

LLA0510-0566

**CONFIDENTIAL**
Page 5 of 13

CAI 4096

*January 23, 2007 11:00am*

*v2006.4.1*

**EXHIBIT 5**
**80**

## FRAUD NOTICE

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

## CERTIFICATIONS

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

## AUTHORIZATION

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed.  A photographic copy of this authorization shall be as valid as the original.  I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Signed at (City and State)  _Stillwater, OK._

(X) Signature of Proposed Insured A  _Carol Ann Powell_
    Carol Ann Powell

Witness  _____

Date  11-13-06

(X) Signature of Proposed Insured B  _____

Witness  _____

Date  _____

(X) Signature of Applicant/Owner/Trustee (Provide
    Officer's Title if policy is owned by a Corporation.)
    J. Mike Holder, President

Witness  _____

Date  1-__-07

35 OK

10/04

**CONFIDENTIAL**

CAI 4334

**EXHIBIT 5**
**81**

 **Lincoln** Financial Group®

### LINCOLN UL^LPR-7

#### A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
1450 Turtlecreek
Village II
3838 Oak Lawn
Dallas, TX 75219
Tel: 214.522.7460
Fax: 214.528.4999

| | |
|---|---|
| Insured: Carol Ann Powell | Initial Death Benefit: $10,000,000 |
| Age: 67 | Initial Death Benefit Opt.: Increase/Premium |
| Sex: Female | Payment Mode: Annual |
| Class: Preferred | Riders: None |

### Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^LPR-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
|---|---|---|---|---|---|---|---|---|---|
| 5  71 | 293,987 | 0 | 0 | 247,496 | 259,879 | 11,469,934 | 11,469,934 | 11,469,934 | 11,469,934 |
| 10 76 | 293,987 | 0 | 207,345 | 1,237,209 | 1,289,761 | 12,939,868 | 12,939,868 | 12,939,868 | 12,939,868 |
| 15 81 | 293,987 | 0 | 0 | 2,072,723 | 2,209,934 | 14,409,801 | 14,409,801 | 14,409,801 | 14,409,801 |
| 20 86 | 0 | 0 | 0 | 437,816 | 696,690 | 14,409,801 | 14,409,801 | 14,409,801 | 14,409,801 |
| 30 96 | 0 | 0 | 0 | 0 | 0 | 14,409,801 | 14,409,801 | 14,409,801 | 14,409,801 |
| 4  70 | 293,987 | 0 | 0 | 75,736 | 83,902 | 11,175,947 | 11,175,947 | 11,175,947 | 11,175,947 |
| 9  75 | 293,987 | 0 | 180,668 | 1,040,105 | 1,081,637 | 12,645,881 | 12,645,881 | 12,645,881 | 12,645,881 |
| 14 80 | 293,987 | 0 | 0 | 1,947,650 | 2,063,242 | 14,115,815 | 14,115,815 | 14,115,815 | 14,115,815 |
| Coverage lapses in year: | | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 |

**NOTE:** If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

3-5-07    Date    x _Carol Ann Powell_
Signature of proposed insured(s)

3-5-07    Date    x _____
Signature of applicant/owner (if other than the proposed insured)

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

3-5-07    Date    x _John Ridings Lee_
Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

**CONFIDENTIAL**                    **CAI 4340**

**EXHIBIT 5**
**82**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO  ☐DO NOT  request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Stillwater, OK

| X _C. Scott Russell_ | Witness _Amber Way_ | Date _11-13-06_ |
| Signature of Proposed Insured A | | |
| G. Scott Russell | | |
| X _J. Mike Holder_ | Witness _Craig Gemons_ | Date _1-29-07_ |
| Signature of Applicant/Owner/Trustee (Provide | Witness | Date |
| Officer's Title if policy is owned by a Corporation) | | |
| J. Mike Holder, President | | |

35 OK                                   CONFIDENTIAL                          CAI 4529

**EXHIBIT 5**
83

 **Lincoln**
Financial Group℠

### LINCOLN UL^LPR-7

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| | |
|---|---|
| Insured: C. Scott Russell | Initial Death Benefit: $10,000,000 |
| Age: 70 | Initial Death Benefit Opt.: Increase/Premium |
| Sex: Male | Payment Mode: Annual |
| Class: Standard Best | Riders: None |

### Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^LPR-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5  74 | 624,063 | 0 | 478,812 | 1,072,187 | 1,100,754 | 13,120,316 | 13,120,316 | 13,120,316 | 13,120,316 |
| 10  79 | 624,063 | 0 | 896,737 | 3,007,725 | 3,127,744 | 16,240,632 | 16,240,632 | 16,240,632 | 16,240,632 |
| 15  84 | 624,063 | 0 | 0 | 4,082,041 | 4,411,589 | 19,360,947 | 19,360,947 | 19,360,947 | 19,360,947 |
| 20  89 | 0 | 0 | 0 | 0 | 0 | 19,360,947 | 19,360,947 | 19,360,947 | 19,360,947 |
| 30  99 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 1  70 | 624,063 | 0 | 0 | 0 | 0 | 10,624,063 | 10,624,063 | 10,624,063 | 10,624,063 |
| 6  75 | 624,063 | 0 | 626,855 | 1,432,061 | 1,472,689 | 13,744,379 | 13,744,379 | 13,744,379 | 13,744,379 |
| 11  80 | 624,063 | 0 | 805,066 | 3,415,704 | 3,565,245 | 16,864,695 | 16,864,695 | 16,864,695 | 16,864,695 |

| Coverage lapses in year: | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 |
|---|---|---|---|---|---|---|---|---|

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07
Date

(X) _C. Scott Russell_
Signature of proposed insured(s)

1-29-07
Date

(X) _J. Mike Holder_
Signature of applicant/owner (if other than the proposed insured)  J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1-29-07
Date

x _John Ridings Lee_
Signature of licensed agent/representative

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

LLA0510-0566

**EXHIBIT 5**
**84**

### FRAUD NOTICE

B45 - Page

Any person who knowingly and with intent to defraud any Insurance Company or other person files an application for Insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, as determined by a court of competent jurisdiction.

**Colorado** – It is unlawful to knowingly provide false, incomplete, misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial or insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Services.

**New Mexico, Oklahoma** – Any person who knowingly and with intent to defraud any insurance company or other person and who files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any false materials thereto commits a fraudulent insurance act which is a crime and subjects such person to criminal and civil penalties.

### CERTIFICATIONS.

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below, and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

### AUTHORIZATION/DECLARATION

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf. I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request. I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., Information.   If an investigative consumer report is obtained, I/we ☐ DO ☐ DO NOT request to be interviewed.

### DECLARATION FOR SVUL/VUL ONLY

I/We declare there is a current need for life insurance.   I/We understand that variable universal life is a life insurance policy.
I/We understand that the cash value and Death Benefit proceeds of a variable universal life policy may increase or decrease based upon the investment experience of the sub-accounts, and that a decrease in cash value may cause a lapse in the policy and loss of life insurance coverage except as provided by any lapse protection provisions of my/our policy.   I/We have been informed of the risks involved in this life insurance policy and I/we believe the SVUL/VUL product is suitable given my/our overall objective towards investing and time horizon.   I/We acknowledge receipt of the current Product Prospectus and Funds Prospectus(es).

Dated at *(City and State)*  Stillwater, OK

(X) _____  Witness _____  Date 1-11-07
Signature of Proposed Insured A  Roy A. Scott

(X) _____  Witness _____  Date 1-29-07
Signature of Applicant/Owner/Trustee *(Provide Officer's Title if policy is owned by a Corporation)*
J. Mike Holder, President

_____  Witness _____  Date _____
Signature of Field Investment Reviewer
*(complete for S/VUL only)*

B45                               **CONFIDENTIAL**                    CAI 4738

**EXHIBIT 5**
85


**Lincoln**
Financial Group®

*LINCOLN UL*^LPR_7

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| Insured: | Roy Scott | Initial Death Benefit: | $10,000,000 |
| Age: | 69 | Initial Death Benefit Opt: | Increase/Premium |
| Sex: | Male | Payment Mode: | Annual |
| Class: | Standard | Riders: | None |

## Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL^LPR_7 illustration. The surrender values
and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
| | | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 73 | 701,966 | 88,233 | 896,383 | 1,362,663 | 1,396,831 | 13,509,832 | 13,509,832 | 13,509,832 | 13,509,832 |
| 10 | 78 | 701,966 | 0 | 1,919,669 | 3,559,813 | 3,702,597 | 17,019,663 | 17,019,663 | 17,019,663 | 17,019,663 |
| 15 | 83 | 701,966 | 0 | 639,322 | 5,138,863 | 5,528,974 | 20,529,495 | 20,529,495 | 20,529,495 | 20,529,495 |
| 20 | 88 | 0 | 0 | 0 | 0 | 125 | 20,529,495 | 20,529,495 | 20,529,495 | 20,529,495 |
| 30 | 98 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 2 | 70 | 701,966 | 0 | 116,738 | 215,017 | 222,027 | 11,403,933 | 11,403,933 | 11,403,933 | 11,403,933 |
| 7 | 75 | 701,966 | 0 | 1,378,556 | 2,199,733 | 2,266,021 | 14,913,764 | 14,913,764 | 14,913,764 | 14,913,764 |
| 12 | 80 | 701,966 | 0 | 1,959,745 | 4,458,641 | 4,677,629 | 18,423,596 | 18,423,596 | 18,423,596 | 18,423,596 |

| Coverage lapses in year: | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |

**NOTE:**  If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value
or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is
lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and
could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this
illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to
consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

1-29-07
Date

1-29-07
Date

x _____
Signature of proposed insured(s)

x _____
Signature of applicant/owner (if other than the proposed insured)     J. Mike Holder

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements
illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the
applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

1-29-07
Date

x _____
Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

**EXHIBIT 5**
**86**

## FRAUD NOTICE
B45 – Page 5

Any person who knowingly and with intent to defraud any Insurance Company or other person files an application for Insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent Insurance act, which is a crime, as determined by a court of competent jurisdiction.

**Colorado** – It is unlawful to knowingly provide false, incomplete, misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial or insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Services.

**New Mexico, Oklahoma** – Any person who knowingly and with intent to defraud any insurance company or other person and who files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any false materials thereto commits a fraudulent insurance act which is a crime and subjects such person to criminal and civil penalties.

## CERTIFICATIONS

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), Insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

## AUTHORIZATION/DECLARATION

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf. I/WE authorize the Company to disclose ~~this information to MIB, Inc., and to other insurers to whom I apply~~ ~~for coverage.~~  *SHS*

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request. I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., Information.  If an investigative consumer report is obtained, I/we ☒ DO ☐ DO NOT request to be interviewed.

## DECLARATION FOR S/VUL/VUL ONLY

I/We declare there is a current need for life insurance.  I/We understand that variable universal life is a life insurance policy. I/We understand that the cash value and Death Benefit proceeds of a variable universal life policy may increase or decrease based upon the investment experience of the sub-accounts, and that a decrease in cash value may cause a lapse in the policy and loss of life insurance coverage except as provided by any lapse protection provisions of my/our policy. I/We have been informed of the risks involved in this life insurance policy and I/we believe the S/VUL product is suitable given my/our overall objective towards investing and time horizon.  I/We acknowledge receipt of the current Product Prospectus and Funds Prospectus(es).

Stillwater, Oklahoma

Dated at *(City and State)* _____

| | | |
|---|---|---|
| ☒ *Sharon H. Scott* | *[signature]* | 1-16-07 |
| Signature of Proposed Insured A  Sharon H. Scott | Witness | Date |
| ☒ *J. Mike Holder* | *[signature] Craig C* | 1-29-07 |
| Signature of Applicant/Owner/Trustee *(Provide Officer's Title if policy is owned by a Corporation.)*  J. Mike Holder, President | Witness | Date |
| | | Date |
| Signature of Field Investment Reviewer *(complete for S/VUL only)* | Witness | Date |

B45

<strong>CONFIDENTIAL</strong>

CAI 4796

<strong>EXHIBIT 5</strong><br>87


**Lincoln**
Financial Group®

*LINCOLN UL<sup>LPR</sup>-7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| | |
|---|---|
| Insured: Sharon Scott | Initial Death Benefit: $10,000,000 |
| Age: 68 | Initial Death Benefit Opt.: Increase/Premium |
| Sex: Female | Payment Mode: Annual |
| Class: Preferred | Riders: None |

## Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL<sup>LPR</sup>-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5   72 | 329,118 | 0 | 38,489 | 392,559 | 407,646 | 11,645,588 | 11,645,588 | 11,645,588 | 11,645,588 |
| 10   77 | 329,118 | 0 | 371,523 | 1,498,735 | 1,561,552 | 13,291,175 | 13,291,175 | 13,291,175 | 13,291,175 |
| 15   82 | 329,118 | 0 | 0 | 2,410,658 | 2,573,284 | 14,936,763 | 14,936,763 | 14,936,763 | 14,936,763 |
| 20   87 | 0 | 0 | 0 | 508,148 | 819,594 | 14,936,763 | 14,936,763 | 14,936,763 | 14,936,763 |
| 30   97 | 0 | 0 | 0 | 0 | 0 | 14,936,763 | 14,936,763 | 14,936,763 | 14,936,763 |
| 3   70 | 329,118 | 0 | 0 | 4,288 | 10,330 | 10,987,353 | 10,987,353 | 10,987,353 | 10,987,353 |
| 8   75 | 329,118 | 0 | 285,787 | 1,051,126 | 1,089,829 | 12,632,940 | 12,632,940 | 12,632,940 | 12,632,940 |
| 13   80 | 329,118 | 0 | 251,020 | 2,109,206 | 2,224,125 | 14,278,528 | 14,278,528 | 14,278,528 | 14,278,528 |
| Coverage lapses in year: | | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| | |
|---|---|
| 1-29-07 | X ~~Sharon Scott~~ |
| Date | Signature of proposed insured(s) |
| 1-29-07 | X ~~J. Mike Holder~~ |
| Date | Signature of applicant/owner (if other than the proposed insured)   J. Mike Holder |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| | |
|---|---|
| 1-29-07 | X ~~John Schmedes~~ |
| Date | Signature of licensed agent/representative |

LLA0510-0566

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

**CONFIDENTIAL**

**EXHIBIT 5**
88

**FRAUD NOTICE**

Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID number shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal Income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question on this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement) if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when 1) the Policy has been delivered to and accepted by me (us), 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we □DO □DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Nov 17 2006   Okla City   OK

X _____   Witness _____   11-17-06
Signature of Proposed Insured 1        Dick Soergel                          Date
   Dick Soergel

X _____   Witness _____   1-9-07
Signature of Proposed Insured 2                                            Date
Signature of Applicant/Owner/Trustee (Provide
Officer's Title if policy is owned by a Corporation)
J. Mike Holder, President

CONFIDENTIAL

CAI 5193

EXHIBIT 5
89


**Lincoln**
Financial Group®

*LINCOLN UL$^{LPR}$-7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| | |
|---|---|
| Insured: Dick Soergel | |
| Age: 69 | |
| Sex: Male | |
| Class: Standard | |

| | |
|---|---|
| Initial Death Benefit: | $10,000,000 |
| Initial Death Benefit Opt.: | Increase/Premium |
| Payment Mode: | Annual |
| Riders: | None |

## Section B - Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL$^{LPR}$-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5 | 73 | 701,966 | 88,233 | 896,383 | 1,362,663 | 1,396,831 | 13,509,832 | 13,509,832 | 13,509,832 | 13,509,832 |
| 10 | 78 | 701,966 | 0 | 1,919,669 | 3,559,813 | 3,702,597 | 17,019,663 | 17,019,663 | 17,019,663 | 17,019,663 |
| 15 | 83 | 701,966 | 0 | 639,322 | 5,138,863 | 5,528,974 | 20,529,495 | 20,529,495 | 20,529,495 | 20,529,495 |
| 20 | 88 | 0 | 0 | 0 | 0 | 125 | 20,529,495 | 20,529,495 | 20,529,495 | 20,529,495 |
| 30 | 98 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 2 | 70 | 701,966 | 0 | 116,738 | 215,017 | 222,027 | 11,403,933 | 11,403,933 | 11,403,933 | 11,403,933 |
| 7 | 75 | 701,966 | 0 | 1,378,556 | 2,199,733 | 2,266,021 | 14,913,764 | 14,913,764 | 14,913,764 | 14,913,764 |
| 12 | 80 | 701,966 | 0 | 1,959,745 | 4,458,641 | 4,677,629 | 18,423,596 | 18,423,596 | 18,423,596 | 18,423,596 |

| Coverage lapses in year: | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
|---|---|---|---|---|---|---|---|---|

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If *0* appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| | |
|---|---|
| *1-29-07* | X *Dick Soergel* |
| Date | Signature of proposed insured(s) |
| *1-29-07* | X *J. Mike Holder* |
| Date | Signature of applicant/owner (if other than the proposed insured)   J. Mike Holder |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| | |
|---|---|
| *1-29-07* | X *John Ridings Lee* |
| Date | Signature of licensed agent/representative |

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

LLA0510-0566

CAI 5145

*January 25, 2007 11:30am*

*v2006.4.1*

**EXHIBIT 5**
**90**

## FRAUD NOTICE

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

## CERTIFICATIONS

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

## AUTHORIZATION

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/WE will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Stillwater, OK

Signed at (City and State)

X _Gwen Soergel_   Signature of Proposed Insured A   Gwen Soergel      Witness _Amber Ivey_      Date _11-17-06_

Signature of Proposed Insured B

X _J. Mike Holder_   Signature of Applicant/Owner/Trustee (Provide Officer's Title if policy is owned by a Corporation)   J. Mike Holder, President      Witness      Date _1-29-07_

35 OK

CONFIDENTIAL      CAI 5252

EXHIBIT 5
91


**Lincoln**
Financial Group®

*LINCOLN UL$^{LPR}$-7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| Insured: | Gwen Soergel | Initial Death Benefit: | $10,000,000 |
| Age: | 67 | Initial Death Benefit Opt.: | Increase/Premium |
| Sex: | Female | Payment Mode: | Annual |
| Class: | Standard | Riders: | None |

## Section B: Summary of Values

### The Values

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL$^{LPR}$-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
| | | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 71 | 433,572 | 0 | 311,233 | 598,645 | 617,734 | 12,167,858 | 12,167,858 | 12,167,858 | 12,167,858 |
| 10 | 76 | 433,572 | 0 | 1,178,528 | 2,075,415 | 2,156,845 | 14,335,716 | 14,335,716 | 14,335,716 | 14,335,716 |
| 15 | 81 | 433,572 | 0 | 1,454,760 | 3,610,822 | 3,610,822 | 16,503,574 | 16,503,574 | 16,503,574 | 16,503,574 |
| 20 | 86 | 0 | 0 | 0 | 1,412,758 | 1,845,150 | 16,503,574 | 16,503,574 | 16,503,574 | 16,503,574 |
| 30 | 96 | 0 | 0 | 0 | 0 | 0 | 16,503,574 | 16,503,574 | 16,503,574 | 16,503,574 |
| 4 | 70 | 433,572 | 0 | 143,636 | 346,243 | 358,862 | 11,734,286 | 11,734,286 | 11,734,286 | 11,734,286 |
| 9 | 75 | 433,572 | 0 | 1,022,318 | 1,776,408 | 1,840,577 | 13,902,144 | 13,902,144 | 13,902,144 | 13,902,144 |
| 14 | 80 | 433,572 | 0 | 1,518,302 | 3,181,467 | 3,364,297 | 16,070,002 | 16,070,002 | 16,070,002 | 16,070,002 |
| Coverage lapses in year: | | | 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 |

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

### The Statements

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| 1-29-07 | ⊗ *Gwen Soergel* |
| Date | Signature of proposed insured(s) |

| 1-29-07 | ⊗ *J. Mike Holder* |
| Date | Signature of applicant/owner (if other than the proposed insured) J. Mike Holder |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| 1-29-07 | X *John Ridings Lee* |
| Date | Signature of licensed agent/representative |

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
*a part of Lincoln National Corporation*

LLA0510-0566

**CONFIDENTIAL**
Page 5 of 13

CAI 5201

*January 25, 2007 11:32am*

v2006.4.1

**EXHIBIT 5**
**92**

Feb 05 07 11:50a     MCG Dallas                    214 528 4399          P.3

## FRAUD NOTICE.
Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION.
Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

## CERTIFICATIONS.
I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements; I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

## AUTHORIZATION.
The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/we will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO  ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Dated At (City and State)  Stillwater, OK

Signature of Proposed Insured & Corp/Off. Owner      Witness  Amber Ivey          11-30-06  Date

Signature of Proposed Insured (if any)

X _____  Witness  Amber Ivey          2-1-07  Date
Signature of Applicant/Owner/Trustee/Corp Officer's Title (policy is owned by a Corporation)      Witness
J. Mike Holder, President

CONFIDENTIAL                              CAI 5563

EXHIBIT 5
93

02/05/2007 11:56 FAX 405 744 4985        OK STATE GOLF                    @001
Feb 05 07 11:50a      MCG Dallas                 214 528 4999        p.2

**Lincoln**
Financial Group™

Prepared by John Ridings Lee
3838 Oak Lawn
Ste 1430
Dallas, TX 75219
Tel. 214 522 7466

## LINCOLN UL LPR-7

### A LIFE INSURANCE ILLUSTRATION
*Flexible Premium Adjustable Life Policy*

| | |
|---|---|
| Insured: Cary Spanks | Initial Death Benefit: $10,000,000 |
| Age: 66 | Initial Death Benefit Opt.: Increasing Premium |
| Sex: Male | Payment Mode: Annual |
| Class: Standard | Rider: None |

### Section B:  Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL LPR-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5  70: | 623,520 | 406,839 | 1,026,770 | 1,377,495 | 1,410,596 | 13,117,601 | 13,117,601 | 13,117,601 | 13,117,601 |
| 10  75: | 623,520 | 0 | 2,528,812 | 3,658,360 | 3,397,858 | 16,235,203 | 16,235,203 | 16,235,203 | 16,235,203 |
| 15  80: | 623,520 | 0 | 3,093,308 | 5,927,345 | 6,204,120 | 19,352,804 | 19,352,804 | 19,352,804 | 19,352,804 |
| 20  85: | 0 | 0 | 0 | 3,352,201 | 4,162,404 | 19,352,804 | 19,352,804 | 19,352,804 | 19,352,804 |
| 30  95: | 0 | 0 | 0 | 0 | 0 | 19,352,804 | 19,352,804 | 19,352,804 | 19,352,804 |
| 5  70: | 623,520 | 406,839 | 1,026,770 | 1,377,495 | 1,410,596 | 13,117,601 | 13,117,601 | 13,117,601 | 13,117,601 |
| 10  75: | 623,520 | 0 | 2,528,812 | 3,658,360 | 3,707,858 | 16,235,203 | 16,235,203 | 16,235,203 | 16,235,203 |
| 15  80: | 623,520 | 0 | 3,093,308 | 5,929,346 | 6,104,120 | 19,352,804 | 19,352,804 | 19,352,804 | 19,352,804 |

| Coverage lapses in year: | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 |
|---|---|---|---|---|---|---|---|---|

NOTE: If "0" appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

2-1-07
Date

X ~~Cary W Spanks~~
Signature of proposed insured

2-1-07
Date

X ~~J. Mike Holder~~  J. Mike Holder
Signature of applicant/owner (if other than the proposed insured)

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

2-1-07
Date

~~John Ridings Lee~~
Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LL.A0510-0566

February 1 2007 10:32am

v/2086-2

**CONFIDENTIAL**

**CAI 5572**

**EXHIBIT 5**
**94**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATION**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

_Stillwater, OK_

Dated at (City and State)

X_____  
Signature of Proposed Insured A  Richard Welborn   Witness        Date  11/13/06

X_____  
Signature of Proposed Insured B            Witness        Date  1-29-07  
Signature of Applicant/Owner/Trustee (Provide  
Officer's Title if policy is owned by a Corporation.)   Witness        Date  
J. Mike Holder, President

35 OK                                    10/04

                          **CONFIDENTIAL**                   CAI 5760

**EXHIBIT 5**
**95**

**Lincoln**
Financial Group®

Prepared by: John Kidingshee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

### *LINCOLN UL<sup>LPR</sup>-7*

### A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

| | | | |
|---|---|---|---|
| Insured: Richard Welborn | | Initial Death Benefit: | $10,000,000 |
| Age: 75 | | Initial Death Benefit Opt: | Increase/Premium |
| Sex: Male | | Payment Mode: | Annual |
| Class: Preferred | | Riders: | None |

## Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL<sup>LPR</sup>-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| | | Surrender Values | | | | Death Benefit | | | |
|---|---|---|---|---|---|---|---|---|---|
| Year/Age | Annual Premium Outlay | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5   79 | 601,876 | 0 | 0 | 849,751 | 875,555 | 13,009,380 | 13,009,380 | 13,009,380 | 13,009,380 |
| 10  84 | 601,876 | 0 | 0 | 1,829,101 | 1,932,025 | 16,018,759 | 16,018,759 | 16,018,759 | 16,018,759 |
| 15  89 | 601,876 | 0 | 0 | 0 | 143 | 19,028,139 | 19,028,139 | 19,028,139 | 19,028,139 |
| 20  94 | 0 | 0 | 0 | 0 | 0 | 19,028,139 | 19,028,139 | 19,028,139 | 19,028,139 |
| 30  104 | 0 | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* |
| 1   75 | 601,876 | 0 | 0 | 0 | 0 | 10,601,876 | 10,601,876 | 10,601,876 | 10,601,876 |
| 6   80 | 601,876 | 0 | 0 | 1,126,486 | 1,162,804 | 13,611,255 | 13,611,255 | 13,611,255 | 13,611,255 |
| 11  85 | 601,876 | 0 | 0 | 1,784,621 | 1,910,855 | 16,620,635 | 16,620,635 | 16,620,635 | 16,620,635 |
| **Coverage lapses in year:** | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 |

**NOTE:** If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

*2-5-07*
Date
x _____
Signature of proposed insured(s)

*2-5-07*
Date
x _____
Signature of applicant/owner if other than the proposed insured)

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

*2-5-07*
Date
x _____
Signature of licensed agent/representative

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

**CONFIDENTIAL**                    **CAI 5767**

February 5, 2007 2:20pm

**EXHIBIT 5**
**96**

**FRAUD NOTICE**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, it is certified that (a) the social security or Employer ID numbers shown in this application are correct taxpayer identification numbers, and (b) the holders of said numbers are not subject to any backup withholding of U.S. Federal income tax for failure to report interest or dividends.

**CERTIFICATIONS**

I/WE have read the questions and answers in this application and declare that they are complete and true to the best of my (our) knowledge and belief. I/WE agree, a) that this Application shall form a part of the Company and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, make or alter any contract, or waive any of the Company's other rights or requirements. I/WE further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made or acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

I/WE have paid $_____ to the Agent/Representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I (we) fully understand and accept its terms.

**AUTHORIZATION**

The purpose of this authorization is to allow The Lincoln National Life Insurance Company, hereinafter Company, to determine eligibility for life coverage or a claim for benefits under a life policy.

I/WE authorize any medical professional, hospital or other medical institution, insurer, MIB, Inc., or any other person or organization that has any records or knowledge of me/us or my/our physical or mental health or insurability to disclose that information to the Company, its reinsurers, or any other party acting on the Company's behalf.

I/WE authorize the Company to disclose medical information to MIB, Inc., and to other insurers to whom I/we may apply for coverage.

This authorization shall be valid for two years after it is signed. A photographic copy of this authorization shall be as valid as the original. I/We will be given a copy of this authorization at my/our request.

I/WE understand that I/we may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected.

If an investigative consumer report is obtained, I/we ☐DO ☐DO NOT request to be interviewed.

I/WE ACKNOWLEDGE receipt of the Important Notice containing the Privacy Notice, Investigative Consumer Report, and MIB, Inc., information.

Dated at (City and State)  *Stillwater, OK*

Signature of Proposed Insured A  Howard Worley, Jr.   Witness   Date  *12-18-06*

Signature of Applicant/Owner/Trustee (Provide Officer's Title if Policy is owned by a Corporation)  J. Mike Holder, President   Witness   Date  *1-24-07*

36 OK

10/04
**CONFIDENTIAL**

CAI 5947

**EXHIBIT 5**
97


**Financial Group®**

*LINCOLN UL$^{LPR}$-7*

A LIFE INSURANCE ILLUSTRATION

*Flexible Premium Adjustable Life Policy*

Prepared by: John Ridings Lee
3838 Oak Lawn
Ste 1450
Dallas, TX 75219
Tel: 214.522.7460

| Insured: Howard Worley | Initial Death Benefit: | $10,000,000 |
| Age: 67 | Initial Death Benefit Opt.: | Increase/Premium |
| Sex: Male | Payment Mode: | Annual |
| Class: Standard | Riders: | None |

### Section B: Summary of Values

**The Values**

Below is a summary of the illustrated surrender values and death benefits of this Lincoln UL$^{LPR}$-7 illustration. The surrender values and death benefits shown below assume that the annual premium outlay amounts are paid as illustrated in Sections C & D.

| Year/Age | | Annual Premium Outlay | Surrender Values | | | | Death Benefit | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis | Guaranteed Basis | Midpoint Basis | Alternate Basis | Current Basis |
| 5 | 71 | 652,812 | 378,329 | 1,047,650 | 1,430,426 | 1,464,940 | 13,264,061 | 13,264,061 | 13,264,061 | 13,264,061 |
| 10 | 76 | 652,812 | 0 | 2,461,182 | 3,722,698 | 3,867,137 | 16,528,121 | 16,528,121 | 16,528,121 | 16,528,121 |
| 15 | 81 | 652,812 | 0 | 2,557,497 | 5,790,490 | 6,181,513 | 19,792,182 | 19,792,182 | 19,792,182 | 19,792,182 |
| 20 | 86 | 0 | 0 | 0 | 2,315,980 | 3,159,985 | 19,792,182 | 19,792,182 | 19,792,182 | 19,792,182 |
| 30 | 96 | 0 | 0 | 0 | 0 | 0 | 19,792,182 | 19,792,182 | 19,792,182 | 19,792,182 |
| 4 | 70 | 652,812 | 302,833 | 748,022 | 1,023,475 | 1,046,164 | 12,611,249 | 12,611,249 | 12,611,249 | 12,611,249 |
| 9 | 75 | 652,812 | 6,608 | 2,205,979 | 3,232,433 | 3,346,702 | 15,875,309 | 15,875,309 | 15,875,309 | 15,875,309 |
| 14 | 80 | 652,812 | 0 | 2,795,750 | 5,482,980 | 5,809,246 | 19,139,370 | 19,139,370 | 19,139,370 | 19,139,370 |
| Coverage lapses in year: | | | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 |

NOTE: If "0"appears in the surrender value or fund value column, the premium outlay will no longer provide for a surrender value or fund value. "0" in the fund value column may indicate a negative number. If "0" appears in any of the above columns, the policy is lapsing without value.

**The Statements**

I (We) have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The licensed agent/representative has told me (us) they are not guaranteed. I understand that this illustration is not a contract and that the terms of the policy constitute the actual agreement of coverage. I have been advised to consult with my own tax advisors regarding the tax effects of the illustrated policy and also with respect to its valuation.

| 1-29-07 | x _____ |
| Date | Signature of proposed insured(s) |
| 1-29-07 | _____ |
| Date | Signature of applicant/owner (if other than the proposed insured) J. Mike Holder |

I certify that this illustration has been presented to the applicant/owner and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration. I have advised the applicant/owner to consult with tax advisors regarding the tax effects of the illustrated policy.

| 1-29-07 | x _____ |
| Date | Signature of licensed agent/representative |

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**
*a part of Lincoln National Corporation*

LLA0510-0566

**EXHIBIT 5**
**98**

From: "Joel W. Reese" <joel.reese@rgmfirm.com>
Subject: Fwd: Subpoena - Cowboy Athletics & T. Boone Pickins issued to Lincoln Benefit Life Company
Date: December 6, 2011 1:13:49 PM PST
To: hoopsdad@allstate.com
Cc: Mary Rahmes <mary.rahmes@gmlawyers.com>, "Bradley M. Gordon" <brad.gordon@rgmfirm.com>

Ms. Hoops:

Pursuant to our motion for protective order, we request that you not produce documents until the Court has had an opportunity to rule on our motion for protective order.  As we have explained in our motion, we think the subpoena is improper.

I have copied opposing counsel on this email so she will understand our request.  I do not believe that counsel that issued the subpoena can enforce the subpoena until the court has had an opportunity to rule on our motion for protective order (which would effectively eliminate the subpoena, if granted).

**Joel Reese**
Direct: (214) 382-9801
Visit our new website at www.rgmfirm.com

Begin forwarded message:

**From:** "Hoops, Denice" <HOOPSDAD@allstate.com>
**Date:** December 6, 2011 2:26:50 PM CST
**To:** <brad.gordon@rgmfirm.com>
**Subject: Subpoena - Cowboy Athletics & T. Boone Pickins issued to Lincoln Benefit Life Company**

Mr. Gordon:

Regarding the above-referenced subpoena, we have received your mailing of December 2, 2011.  The cover letter indicates the Third Party Defendants have requested a protective order in connection with the subpoena.

However, the draft Order included as Exhibit D to the Third-Party Defendants' Motion for Protective Order and Brief in Support states:

"It is Therefore Ordered that the Third-Party Defendants' objections to the Subpoenas, as that term is defined in the Motion, are sustained, and Cowboy Athletics, Inc. and Pickens are barred from seeking the discovery set forth in the Subpoenas."

Lincoln Benefit has requested and received an extension for response from Ms. Rahmes, however, she could not comment on the Motion or the Order at this time.  She did point out that the filing was a Motion for a Protection Order and not a Motion to Quash.

The text in the drafted Order is confusing.  A Motion for a Protection Order would not affect our requirement to produce the documents.  If the Judge signs the Order in Exhibit D, the text quoted above makes it appear that the production of the documents is barred.

Your explanation is requested.  Based upon the extension granted, I need to send out the response documents no later than Thursday afternoon, December 8.  Your prompt attention to this matter will be greatly appreciated.

Denice Hoops
Senior Law Assistant
Lincoln Benefit Life Company
Financial Law & Regulation Department
2940 South 84th Street, 1B3
Lincoln, NE  68506
(402)328-5701
(800)525-2799, ext 85701
(877)511-5879, fax
* * * NOTE:  This message and attachments contain information which is CONFIDENTIAL AND LEGALLY PRIVILEGED BY THE ATTORNEY-CLIENT AND/OR ATTORNEY WORK PRODUCT DOCTRINE.  The information contained herein is intended only for the individual or entity named in this message.  If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is **STRICTLY PROHIBITED.**  If you received this message in error, please notify us by telephone at (800)525-2799, extension 85701 and then kindly DESTROY all messages and attachments. * * * *

**EXHIBIT 6**
**99**

EXHIBIT 6
100

GIANELLI & MORRIS
A LAW CORPORATION
888 West Sixth Street, Ninth Floor
Los Angeles, California 90017

TIMOTHY J. MORRIS
tim.morris@gmlawyers.com

RICHARD R. FRUTO
richard.fruto@gmlawyers.com

Telephone: (213) 489-1600
Facsimile (213) 489-1611

December 9, 2011

*By Email and U.S. Mail*

Joel W. Reese
Bradley M. Gordon
REESE GORDON MARKETOS LLP
750 N. Saint Paul Street, Suite 610
Dallas, Texas 75201
(214) 382-9810; FAX 214.501.0731
Email: joel.reese@rgmfirm.com
      brad.gordon@rgmfirm.com

Re:    *The Lincoln National Life Ins. Co., et al. v. Cowboy Athletics, Inc. et al.*
       USDC-Northern District of Texas, Case No. 3:10-cv-00173-P

Dear Counsel:

     We have been contacted by counsel and representatives for certain insurance companies on whom we served document subpoenas regarding T. Boone Pickens' insurance policies. As a result, it has come to our attention that you unilaterally served all of the 13 entities with a letter dated December 2, 2011, and a copy of your motion for protective order.

     None of these companies have objected to the subpoenas. However, based upon those inquiries and your email response to Denice Hoops at Lincoln Benefit Life, we understand that you are instructing them that they need not comply with the subpoenas until the Court rules on your motion.

     First, none of them were on the proof of service when we were served with the motion. So until they contacted us, we were unaware that they had been served with the motion and also instructed not to comply with the subpoena.

     Second, we are unaware that bringing a motion for protective order based only on objections to relevance, as set forth in your motion, is equivalent to a motion to quash. Under Rule 45(c)(3), a motion to quash in the court that issued the subpoena, not a motion for protective order, is the only appropriate method to prevent compliance with a subpoena. That is particularly so when the motion for protective order is not even brought in the court that issued

**EXHIBIT 7**
**101**

Joel W. Reese, Esq.
**REESE GORDON MARKETOS LLP**
December 9, 2011
Page 2

the subpoena and is instead filed in a court that has no jurisdiction over the subpoenaed party, as here. See *In re Clients and Former Clients of Baron & Budd, P.C.*, 478 F.3d 670 (5th Cir. 2007)(recognizing that only issuing court has jurisdiction to hear motion to quash, except where subpoena is issued in MDL litigation). Moreover, in the Fifth Circuit, as well as the Northern District of Texas, a party has no standing to challenge a third-party subpoena on relevance grounds, as here with your motion. See *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Canyon Partners, L.P. v. Developers Diversified Realty Corp.*, 2005 U.S. Dist. LEXIS 26782, 4 (N.D. Texas 2005). If you have any authority to the contrary, please point us to it.

Third, we are also unaware that bringing a motion for protective order, which Rule 45(c)(3) does not provide for, allows you to instruct third-parties served with a subpoena not to comply with the subpoena until the motion is ruled on. Again, if you have authority that you can instruct a subpoenaed party so, please let us know.

Finally, we demand that you advise us who you contacted about the subpoenas, when, and what you specifically advised them about complying with the subpoenas. Further, unless you present any authority in support of your actions, we demand that you advise counsel and representatives of the subpoenaed entities that you erred in advising them that they need not comply with the subpoenas at this time. Otherwise, we will advise the Court in any opposition to your motion that you are interfering with the subpoena process in the actions you've taken with respect to the motion.

With kind regards,

TIMOTHY J. MORRIS
RICHARD R. FRUTO

RRF/cg

**EXHIBIT 7
102**

From: Connie Gonzales <connie.gonzales@gmlawyers.com>
Subject: **The Lincoln National Life Ins. Co., et al. v. Cowboy Athletics, Inc. et al.**
Date: December 9, 2011 10:54:49 AM PST
To: Joel.reese@rgmfirm.com, brad.gordon@rgmfirm.com
Cc: hoopsdad@allstate.com, mary.barney@genworth.com, stephen.baker@dbr.com, david.brown@dbr.com, andrew.lorin@dbr.com, grant.nichols@dbr.com, gregory.star@dbr.com, charles.vinicombe@dbr.com, andrew.jubinsky@dbr.com, ray.walker@figdav.com, stacy@stacyconder.com, howie@stacyconder.com, wab@bickelbrewer.com, jyc@bickelbrewer.com, jsr@bickelbrewer.com, alya.taha@rgmfirm.com, silvetti@stacyponder.com, spencer@stacyponder.com, Richard Fruto <richard.fruto@gmlawyers.com>, Tim Morris <tim.morris@gmlawyers.com>, Rob Gianelli <rob.gianelli@gmlawyers.com>, Mary Rahmes <mary.rahmes@gmlawyers.com>, Diane Schmidt <diane.schmidt@gmlawyers.com>, Shayn Adamson <shayn.adamson@gmlawyers.com>

▶    1 Attachment, 86.7 KB

---

Dear Counsel, attached please find correspondence from Richard R. Fruto dated today.  Original will follow via mail.


Connie Gonzales
Assistant to Richard R. Fruto
Gianelli & Morris
888 W. Sixth Street, 9th Floor
Los Angeles, CA  90017
Tel: 213.489.1600 / Fax: 213.489.1611
connie.gonzales@gmlawyers.com




OSUScans.PDF (86.7 KB)


**EXHIBIT 7**
**103**



**Genworth**
Financial

Genworth Life Insurance Company

700 Main Street, PO Box 1280
Lynchburg, VA 24504
(888) 325-5433
(434) 948-5819 fax
www.genworth.com

Mary V. Barney
Associate General Counsel
(434) 948-5193

**RECEIVED**

DEC 0 7 2011

GIANELLI & MORRIS

**VIA FEDERAL EXPRESS 2ND DAY**

December 5, 2011

Bradley M. Gordon
Reese Gordon Marketos
750 N. St. Paul Street, Suite 610
Dallas, TX 75201

> Re:   *The Lincoln National Life Insurance Company v. Cowboy Athletics, Inc.
> and T. Boone Pickens*

Dear Mr. Gordon:

We received your letter dated December 2, 2011.  We will not take further action on the subpoena until we receive a court order in response to your motion to quash or notice of an agreement among the parties concerning the motion.

We note, however, that we had already produced certain information before receiving your motion.  Our production was not complete, and as noted above, we will take no further action until the matter is resolved.

Very truly yours,

Mary V. Barney
Associate General Counsel

MVB/bc

Cc:   Mary T. Rahmes, Esq.
Gianelli & Morris
888 West Sixth Street, 9th Floor
Los Angeles, CA 90017

**EXHIBIT 8
104**

From: (434) 948-5563
Barbara Campbell
Genworth Financial
3100 Albert Lankford Drive
Lynchburg, VA 24501

Origin ID: LYHA    

Ship Date: 05DEC11
ActWgt: 1.0 LB
CAD: 7266648/INET3210

Delivery Address Bar Code

J112011080502225

SHIP TO: (213) 489-1600    BILL SENDER
**Mary T. Rahmes**
**Gianelli & Morris**
**888 W 6TH ST FL 9**

**LOS ANGELES, CA 90017**

Ref #
Invoice #
PO #
Dept #



TRK# 7954 7487 0320
0201

**SA EMTA**

**WED - 07 DEC  A2**
**** 2DAY ****

**90017**
CA-US
**LAX**



50FG1/639F/F5F4

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/html/en//PrintIFrame.html

12/5/2011

**EXHIBIT 8**
**105**


**MassMutual**
**FINANCIAL GROUP®**

December 8, 2011

**RECEIVED**

DEC 1 3 2011

GIANELLI & MORRIS

<u>**Via First Class Mail**</u>

Mary T. Rahmes, Esquire
Gianelli & Morris
888 West Sixth Street, 9th Floor
Los Angeles, CA 90017

Bradley M. Gordon, Esquire
Reese Gordon Marketos
750 N. St. Paul Street, Suite 610
Dallas, TX 75201

Andrew G. Jubinsky, Esquire
Figari & Davenport LLP
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, TX 75202-3796

Re:   <u>The Lincoln National Life Insurance Company v. Cowboy Athletics,
Inc. and T. Boone Pickens</u>

Dear Ms. Rahmes, Mr. Gordon & Mr. Jubinsky:

We are in receipt of a subpoena in the matter of *The Lincoln National Life Insurance
Company v. Cowboy Athletics, Inc. and T. Boone Pickens* dated November 18, 2011 and
served on Massachusetts Mutual Life Insurance Company ("MassMutual") on November
21, 2011.

Our response to the subpoena is currently due on December 12, 2011.  We have received
Mr. Gordon's letter dated December 2, 2011 informing us that he has filed Third-Party
Defendant's Motion for Protective Order and Brief in Support seeking to relieve
MassMutual of any obligation under the subpoena.  As such, MassMutual will not
respond to the subpoena until the parties inform MassMutual as to the disposition of
Third-Party Defendant's Motion for Protective Order.

In the event that you are made aware of the disposition or that a motion to modify the
subpoena has been filed by the respondent, please forward such documentation directly to
my attention.

MassMutual Financial Group is a marketing name for Massachusetts Mutual Life Insurance Company (MassMutual) and its affiliated companies and sales representatives.
Springfield, MA  01111-0001   •   (413) 788-8411

S1002 410

**EXHIBIT 9**
**106**

Ms. Rahmes, Mr. Gordon & Mr. Jubinsky
December 8, 2011
Page 2

Should you have any questions or concerns, please do not hesitate to contact me directly
at (413) 744-0347.

Sincerely,

Susana M. Marques
Senior Paralegal

**EXHIBIT 9**
**107**

From: "Hoops, Denice" <HOOPSDAD@allstate.com>
Subject: FW: The Lincoln National Life Ins. Co., et al. v. Cowboy Athletics, Inc. et al.
Date: December 20, 2011 8:19:33 AM PST
To: <mary.rahmes@gmlawyers.com>
Cc: <joel.reese@rgmfirm.com>

Hi Mary:

I had our attorney review this email string and the correspondence
received from both Bradley Gordon and Richard R. Fruto regarding the
subpoena requests. Our position is that we are waiting to hear the
outcome of the hearing Joel Reese references below. If the Court rules
that the documents are to be produced, we will produce them immediately.
If the Court rules that the documents are not to be produced, we will
not provide the documents.

Denice Hoops
Senior Law Assistant
Allstate Financial Law & Regulation Department
2940 South 84th Street, 1B3
Lincoln, NE 68506
(402)328-5701
(800)525-2799, ext 85701
(877)511-5879, fax
* * *-* NOTE: This message and attachments contain information which is
CONFIDENTIAL AND LEGALLY PRIVILEGED BY THE ATTORNEY-CLIENT AND/OR
ATTORNEY WORK PRODUCT DOCTRINE. The information contained herein is
intended only for the individual or entity named in this message. If
you are not the intended recipient, be aware that any disclosure,
copying, distribution, or use of the contents of this information is
STRICTLY PROHIBITED. If you received this message in error, please
notify us by telephone at (800)525-2799, extension 85701 and then kindly
DESTROY all messages and attachments. * * * *


-----Original Message-----
From: Joel W. Reese [mailto:joel.reese@rgmfirm.com]
Sent: Friday, December 09, 2011 1:34 PM
To: Connie Gonzales
Cc: brad.gordon@rgmfirm.com; Hoops, Denice; mary.barney@genworth.com;
stephen.baker@dbr.com; david.brown@dbr.com; andrew.lorin@dbr.com;
grant.nichols@dbr.com; gregory.star@dbr.com; charles.vinicombe@dbr.com;
andrew.jubinsky@dbr.com; ray.walker@figdav.com; stacy@stacyconder.com;
howie@stacyconder.com; wab@bickelbrewer.com; jyc@bickelbrewer.com;
jsr@bickelbrewer.com; alya.taha@rgmfirm.com; silvetti@stacyponder.com;
spencer@stacyponder.com; Richard Fruto; Tim Morris; Rob Gianelli; Mary
Rahmes; Diane Schmidt; Shayn Adamson
Subject: Re: The Lincoln National Life Ins. Co., et al. v. Cowboy
Athletics, Inc. et al.

I propose that we resolve this dispute by having a brief hearing on our
motion. We believe that Cowboy Athletics has abused the subpoena process
by requesting documents that have nothing to do with this case. Now
Cowboy Athletics is trying to force the production of the documents
before a hearing can be held. We think the third parties are justified
in waiting to see how the court rules on the matter. Let's have a
hearing. If we are wrong, you will get the documents. If we are
correct, then we have prevent the unnecessary production of documents by
18 third parties in multiple jurisdictions.

Tell me what time and date would be convenient for a hearing and we will
schedule the hearing immediately.

EXHIBIT 10
108

Joel Reese

Sent from my iPhone

On Dec 9, 2011, at 12:54 PM, Connie Gonzales
<connie.gonzales@gmlawyers.com> wrote:

Dear Counsel, attached please find correspondence from Richard R.
Fruto dated today.  Original will follow via mail.

Connie Gonzales
Assistant to Richard R. Fruto
Gianelli & Morris
888 W. Sixth Street, 9th Floor
Los Angeles, CA  90017
Tel: 213.489.1600 / Fax: 213.489.1611
connie.gonzales@gmlawyers.com


<OSUScans.PDF>

**EXHIBIT 10**
**109**

From: "LeMosy, Judy" <LeMosy.Judy@principal.com>
Subject: **Lincoln National Life Insurance vs Cowboy Athletics et al.**
Date: December 22, 2011 12:20:02 PM PST
To: "mary.rahmes@gmlawyers.com" <mary.rahmes@gmlawyers.com>

Mary,

I spoke with Hannah and confirmed that she believes that it is best for Principal Life to wait for the court's response on the Motion for Protective Order filed by the 3rd party defendants.

Please let us know if there are any questions or if you need anything further.

Thanks and regards,

Judy LeMosy / Paralegal Analyst / Principal Financial Group / Ph: (515) 247-0944 / Fax: (866) 496-6527

-----Message Disclaimer-----

This e-mail message is intended only for the use of the individual or
entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.
If you are not the intended recipient, any dissemination, distribution or
copying of this communication is strictly prohibited. If you have
received this communication in error, please notify us immediately by
reply email to Connect@principal.com and delete or destroy all copies of
the original message and attachments thereto. Email sent to or from the
Principal Financial Group or any of its member companies may be retained
as required by law or regulation.

Nothing in this message is intended to constitute an Electronic signature
for purposes of the Uniform Electronic Transactions Act (UETA) or the
Electronic Signatures in Global and National Commerce Act ("E-Sign")
unless a specific statement to the contrary is included in this message.

While this communication may be used to promote or market a transaction
or an idea that is discussed in the publication, it is intended to provide
general information about the subject matter covered and is provided with
the understanding that The Principal is not rendering legal, accounting,
or tax advice. It is not a marketed opinion and may not be used to avoid
penalties under the Internal Revenue Code. You should consult with
appropriate counsel or other advisors on all matters pertaining to legal,
tax, or accounting obligations and requirements.

**EXHIBIT 11**
**110**